# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00886-SCT

*ANITA WHITE a/k/a MICHELLE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/17/97 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LAUREL G. WEIR |
| | THOMAS L. BOOKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 2/11/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/99 |

**BEFORE PRATHER, C.J., McRAE AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. A Scott County jury found Anita White guilty of the sale of cocaine in violation of Miss. Code Ann. § 41-29-139(a)(1) (1972). The Honorable Marcus D. Gordon sentenced her to 15 years in the custody of the Mississippi Department of Corrections and fined her $5,000. Subsequently, White moved the trial court for a j.n.o.v. or, in the alternative, a new trial. From denial of said motion, White timely perfected an appeal to this Court seeking a reversal of the judgment and conviction of the trial court.

> **I. REVERSIBLE ERROR EXISTS BECAUSE THE TRIAL COURT DID NOT PERMIT THE JURY TO HAVE THE TAPES INTRODUCED AS EVIDENCE DURING THEIR DELIBERATION.**

> **II. APPELLANT SHOULD BE DISCHARGED BECAUSE OF THE FACT THAT THE VERDICT OF THE JURY AND JUDGMENT OF THE COURT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE LAW AND EVIDENCE AND NOT SUPPORTED**

**BY ANY LAW OR EVIDENCE AND APPELLANT DID NOT RECEIVE A FAIR AND IMPARTIAL TRIAL.**

**III. THE COURT ERRED IN REFUSING INSTRUCTIONS REQUESTED BY THE APPELLANT.**

## STATEMENT OF THE FACTS

¶2. On June 10, 1996, undercover agent Stanley Wash ("Wash") and Davon Spivey ("Spivey"), a confidential informant, went to Anita White's ("White") home in Scott County to purchase drugs. Spivey asked White if she had anything. White asked what they wanted, and Spivey replied that he wanted a "sixty" or a "double up" of cocaine, meaning double the amount of dope for the money. White told the men to wait a minute and she went inside her trailer returning a few minutes later with the cocaine. White handed Spivey the cocaine and Wash paid her the $60 for the cocaine. The substance which White gave to Spivey and Wash was determined by the Mississippi Crime Laboratory to be crack cocaine.

¶3. Prior to the undercover buy, Spivey was provided with a body mike and a transmitter. Jimmie Nichols ("Nichols") and Luis Hawkins ("Hawkins"), both undercover agents with the Mississippi Bureau of Narcotics, listened to the buy via the transmitter worn by Spivey. The entire transaction was recorded on a micro cassette. At trial, Wash identified the voice on the tape as that of White.

¶4. Nichols believed White's first name was Priscilla based on information provided to him by the Sheriff's Department. On the night of the buy, Spivey referred to White's first name as "Chelle" or Michelle. Based on this information, Nichols listed White's name as Michelle on the affidavit. Hawkins used the names of Michelle and Priscilla when referring to White in his reports.

¶5. White testified at trial that she did not go by the name of Michelle. She claimed that the agents had in fact purchased the drugs from a woman named Michelle Carr, who lived with White during the time period. White also testified that it was not her voice on the tape but rather that of Michelle Carr. Her defense at trial was that the agents had mistaken her for Carr. She also claimed to be at the casino with Will Hughes on the night of the buy. Neither Carr nor Hughes testified at trial. White denied ever having seen Wash and said she did not know Spivey.

¶6. Agent Wash participated in the subsequent arrest of White. First, the agents went to White's home, but Wash said that the woman who came to the door was not the person he had brought drugs from on the night in question. The agents then proceeded to King Lumber Company, White's place of employment, where Wash immediately identified White as the person who had sold him drugs on June 10, 1996.

### I. THE TAPE RECORDING ALLEGED BY THE STATE OF THE VOICE OF APPELLANT MUST BE RECEIVED BY A JURY IN EVIDENCE AND REFUSAL OF THIS REQUIRES A REVERSAL.

¶7. White alleges that it was error for the trial judge not to allow the jury to take the tape with them when it went to deliberate. Before reaching the merits of White's claim, we briefly address the State's argument that White failed to properly preserve this issue in the lower court.

¶8. During the course of trial, White sought to have the original tape admitted into evidence. The following conversation occurred between Mr. Weir, Mr. Booker, both are counsel for White, and the court:

MR. WEIR: If the court please, we need to introduce the original tape into evidence at this time.

THE COURT: I am going to allow a copy of the tape to be introduced into evidence, and the original will be retained by the Bureau.

MR. WEIR: That's all right, Judge, and we appreciate it. One other thing, Your Honor. The jury may need some way to play the tape.

THE COURT: You know that the jury cannot replay the tape in the jury room, Laurel. That's law that has been settled a long time ago.

MR. BOOKER: This is a copy furnished us by the D.A.'s office.

A copy of the tape was then offered into evidence, identified, marked as Defendant's Exhibit No. 1 and made a part of the record thereof.

¶9. Generally, a party's failure to pose a contemporaneous objection at trial will operate to waive the issue on appeal. ***Holland v. State***, 656 So.2d 1192, 1197 (Miss. 1995). A trial judge cannot be placed in error on a matter that he did not have the opportunity to rule upon. make. ***Livingston v. State***, 525 So.2d 1300, 1303 (Miss.1988). While not explicitly objecting to the trial judge's comments, White did place the issue of allowing the tape into the jury room before the lower court. Although White could have made a more complete record, we find that the issue is properly before the Court.

¶10. Counsel for White claims that the trial court's refusal to allow the tape into the deliberation room denied the jury the opportunity to compare the voice on the tape with that of White, who testified at trial. The State argues that the trial judge was within his discretion to disallow the tape in the jury room.

¶11. Rule 3.10 of the Uniform Circuit and County Court Rules states as follows:

> The court shall permit the jury, upon retiring for deliberation, to take to the jury room the instructions and exhibits and writings which have been received in evidence, except depositions.[(1)]

Miss. Code Ann. § 99-17-37 (1994) provides that "[a]ll papers read in evidence . . . may be carried from the bar by the jury." This Court has had several opportunities to interpret Rule 3.10 and § 99-17-37.

¶12. Both parties cite ***Pettit v. State***, 569 So.2d 678 (Miss. 1990) as support for their respective positions. ***Pettit*** also involved a situation where the trial judge refused to allow a tape recording to go to the jury. ***Id***. at 680. The ***Pettit*** Court held that the language found in 5.14[(2)] is, within reason, mandatory. ***Id***. However, it remains within the discretion of the trial court to withhold exhibits that may be "dangerous or prone to destruction" and the trial court retains broad discretion to "regulate the presentation of the tape to the jury, such as limiting the number of replays." ***Id***. Although the ***Pettit*** Court found the trial judge's refusal to let the tape go to the jury was error, the error was harmless because the tape recording was of poor quality, the jury heard it once in its entirety, and heard certain parts a second time. ***Id***.

¶13. The reasoning of the ***Pettit*** Court has been upheld on at least two occasions. *See* ***Heidelberg v. State***, 584 So.2d 393, 396 (Miss. 1991)(refusal to allow defense counsel to use chart as visual aid was error, but found harmless under the circumstances) and ***Walker v. State***, 671 So.2d 581, 604 (Miss. 1995)(evidence should be given to the jury unless, within the court's discretion, the trial judge has a valid

reason to exclude it from the jury room).

¶14. A case of mistaken identity was the main thrust of White's defense strategy. Her counsel argued that the errors in the officer's description of White and the disparity between her voice and the one heard on the tape constituted reasonable doubt. Unlike *Pettit supra*, the jury at White's trial was afforded only one opportunity to listen to the tape. Further complicating matters is the trial court's erroneous statement in front of the jury that the law has been settled a long time against allowing the tape into the jury room.

¶15. Neither party mentioned the clarity of the tape recording either at trial or on appeal. In fact, the tape has not been made part of the record before this Court on appeal. Thus, unlike the *Pettit* Court, we are unable to assess the condition of the tape on appeal. Nonetheless, the inference is that the voices were clear since counsel never argued that the tape was too distorted to identify White's voice.

¶16. The language of Rule 3.10 is clear as is the precedent of this Court. Trial courts **shall** allow the exhibits and writings, except depositions, which have been received in evidence, to go to the jury room, unless the judge has valid reason for not doing so. Trial courts retain the authority to regulate the number of times a tape is played before the jury. In the case *sub judice*, however, the court appears to have based its ruling on an incorrect statement of the law, rather than on its discretion to limit the number of replays.

¶17. Considering the inaccurate statement of law made by the trial judge and the factors that distinguish this case from *Pettit*, we cannot say that the error here was harmless. As such, reversal is necessary.

> ## II. APPELLANT SHOULD BE DISCHARGED BECAUSE OF THE FACT THAT THE VERDICT OF THE JURY AND JUDGMENT OF THE COURT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE LAW AND EVIDENCE AND NOT SUPPORTED BY ANY LAW OR EVIDENCE AND APPELLANT DID NOT RECEIVE A FAIR AND IMPARTIAL TRIAL.

¶18. Within this single issue White argues that her conviction should be reversed for numerous reasons. She begins by arguing that because two agents, neither of whom were physically present when the transaction took place, could not identify White's voice on the tape, reversal of her conviction is required. She also points to the discrepancy in her description, 5 feet 8 inches in the initial report versus her actual height of 4 feet 10 inches, and the failure of the State to produce the confidential informant as reasons requiring reversal. White submits that the confusion surrounding her first name, Anita, Michelle, and Priscilla at various points, shows that the State failed to carry its burden of proof, which she claims is beyond "every reasonable doubt."

¶19. With regard to the merits of the issue, it is unclear whether White is attacking the verdict as being against the weight and sufficiency of the evidence or is testing the legal sufficiency of the evidence. Therefore, we will briefly address each.

¶20. When reviewing a challenge to the weight and sufficiency of the evidence, we adhere to the following standard of review:

> "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Herring v. State*, 691 So.2d 948, 957 (Miss.1997)(citing *Thornhill v. State*, 561 So.2d 1025, 1030 (Miss.1989)). "Only when

the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Herring*, 691 So.2d at 957(citing *Benson v. State*, 551 So.2d 188, 193 (Miss.1989)). "In reviewing this claim, this Court must accept as true the evidence favorable to the State." *Wetz v. State*, 503 So.2d 803, 812 (Miss.1987)(*citing Van Buren v. State*, 498 So.2d 1224, 1228 (Miss.1986)). "[W]here there is conflicting testimony, the jury is the judge of the credibility of the witnesses." *Wetz*, 503 So.2d at 812

*Turner v. State,* No. 96-KA-00957-SCT, 1998 WL. 449673, at *7 (Miss. Aug. 6, 1998) (citations omitted).

¶21. The standard of review for challenging the legal sufficiency of the evidence is:

Where a defendant has requested a peremptory instruction in a criminal case or after conviction moved for a judgment of acquittal notwithstanding the verdict, the trial judge must consider all of the evidence--not just the evidence which supports the State's case . . . . The evidence which supports the case of the State must be taken as true . . . . The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence . . . . If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the peremptory instruction or judgment n.o.v. is required. On the other hand, if there is substantial evidence opposed to the request or motion--that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair minded men in the exercise of impartial judgment might reach different conclusions--the request or motion should be denied.

*Weeks v. State*, 493 So.2d 1280, 1282 (Miss.1986)(*quoting Gavin v. State*, 473 So.2d 952, 956 (Miss.1985)).

¶22. Despite White's confusion of the issue, she is not entitled to either a new trial or a complete discharge. The question of the credibility of the witnesses is one to be resolved by the jury. *Gandy v. State*, 373 So.2d 1042, 1045 (Miss. 1979). The State produced an eyewitness to the drug sale who identified White as the person who sold him the cocaine. White asserted that it was not her who consummated the sale of drugs with Wash and Spivey. The jury resolved this conflict in testimony in favor of the State based on the credible evidence produced at trial. We will not invade the province of the jury on questions of fact such as these. The State produced ample evidence with which a jury could find that White committed the offense with which was she charged. Likewise, we find that reasonable jurors could have found beyond a reasonable doubt that White was guilty. Thus, White's argument that the legal sufficiency of the evidence is lacking is without merit and is denied.

¶23. Finally, White apparently is alleging a discovery violation based on the State's failure to produce Spivey. This matter was originally set for trial on February 11, 1997. On February 10, White filed a motion to compel the State to produce Spivey and Chris Bishop, an agent who participated in the remote audio surveillance of the transaction. This motion was granted by the trial court. Counsel for White, in an affidavit, stated that he paid $208 to subpoena eight witnesses to trial. However, the record reveals that the request for subpoenas was issued for only four witnesses, Wash, Bishop, Michelle Carr and Spivey. In the record, the notation "NF" is found beside the names of Carr and Spivey. Also on February 10, White filed a motion for a continuance and trial was continued until the next term of court.

¶24. The record contains no further mention of attempts, by either White or the State, to locate Spivey or Bishop. Counsel for White argued during closing that the State could have put Spivey on the stand. The State immediately objected, noting that White could have called Spivey, and the trial court sustained the objection. From February 10 until the trial date of June 11, there is nothing in the record to indicate that White was frustrated in her attempts to locate witnesses. At trial, White did not bring the issue before the court or object to Spivey's absence other than to argue that Spivey was not called by the State.

¶25. An appeal comes to this Court with a presumption of correctness. ***Clark v. State***, 503 So.2d 277, 280 (Miss. 1987). White bears the burden of demonstrating reversible error on appeal. ***Stringer v. State***, 454 So.2d 468, 480 (Miss. 1984). Finding nothing further in the record and noting the lack of an objection from White during trial, we are ill-equipped to find error as to the alleged discovery violation. Further, this entire issue is without merit.

### III. THE COURT ERRED IN REFUSING INSTRUCTIONS REQUESTED BY THE APPELLANT.

¶26. White's first complaint stems from the refusal of D-1, a peremptory instruction. Our review here is the same as our review of the denial of a directed verdict or j.n.o.v, *supra*. ***May v. State,*** 460 So.2d 778, 780-81 (Miss.1984). Viewing the evidence in the light most favorable to the State, we find that the trial judge did not abuse his discretion in denying White's peremptory instruction.

¶27. White next complains that it was error for the trial court to refuse D-4. D-4 is a cautionary instruction and states as follows:

> The Court instructs the jury that the testimony of Stanley Wash as an undercover agent, confidential informant, should be considered by the jury with great care and caution and unless the jury should believe from the evidence beyond all reasonable doubt that defendant is guilty of the crime it is your sworn duty to return a verdict of not guilty and in passing on what weight, if any, you should give the testimony of said confidential informant, you should weigh it with great care and caution and look upon it with distrust and suspicion.

¶28. At trial, counsel stated that he needed to amend the instruction to fill in the blank with the name of Stanley Wash, whom White asserted was the confidential informant. The trial court replied that Wash was not the confidential informant, but rather, the undercover agent. White continued to insist that Wash was the informant but stated he would block that out and put in undercover agent. The trial court refused the instruction as written.

¶29. White asserts that the testimony of Wash should be considered as the testimony of an accomplice or confidential informant. It is true that where the State's case is based upon the testimony of an accomplice, corroborated only by a confidential informant, the trial court must grant a cautionary instruction. *See* ***Edwards v. State***, 630 So.2d 343, 344 (Miss. 1994) and ***Parker v. State***, 378 So.2d 662, 663 (Miss. 1980). Wash, however, is an undercover agent with the Mississippi Bureau of Narcotics and not an accomplice or a confidential informant. This argument is wholly without merit.

¶30. Finally, White alleges that it was error to refuse D-6, which appears to be a circumstantial evidence instruction. The State objected on the grounds that it was not a circumstantial evidence case. "[T]he rule in Mississippi is that a circumstantial evidence instruction should be given only when the prosecution can

produce neither eyewitnesses or a confession to the offense charged." ***Stringfellow v. State***, 595 So.2d 1320, 1322 (Miss.1992). Agent Wash was an eyewitness to the crime. This entire assignment of error is without merit.

## CONCLUSION

¶31. The trial judge abused his discretion by withholding the tape recording from the jury during its deliberations. As a result, the jury was denied the opportunity to replay the tape and White's defense of mistaken identity was impaired. Under the circumstances, it cannot be said that the error was harmless. White's remaining contentions are without merit.

¶32. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. White cites as the applicable rule, Rule 5.14 of the Uniform Criminal Rule of Circuit Court Practice. However, the Uniform Circuit and County Court Rules were adopted in May of 1995, and were in effect when White's trial was held on June 11, 1997. Regardless, the text of 5.14 and 3.10 is identical.

2. Now Rule 3.10 of the Uniform Circuit and County Rules.