# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-KA-01059-COA

ANTWON ELLIS A/K/A ANTWON LESHAY ELLIS                    APPELLANT

v.

STATE OF MISSISSIPPI                                             APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/09/1999 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAN W. DUGGAN JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED III |
| | MICHAEL C. MOORE |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | 06/09/1999: CAPITAL MURDER: SENTENCED TO SERVE A TERM OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MDOC; CAUSE TO RUN CONSECUTIVE TO 97-1-95 AND 97-3-215 CTS. 1 & 2 |
| DISPOSITION: | AFFIRMED-8/15/00 |
| MOTION FOR REHEARING FILED: | 8/24/2000; denied 10/17/2000 |
| CERTIORARI FILED: | 10/27/2000; granted 12/21/2000 |
| MANDATE ISSUED: | |

BEFORE KING, P.J., BRIDGES, AND MOORE, JJ.

KING, P.J., FOR THE COURT:

¶1. Antwon Ellis (Ellis) perfected this appeal from an order of the Circuit Court of Hinds County, Mississippi denying his motion for a new trial or alternatively a judgment notwithstanding the verdict. Ellis was sentenced to serve life without parole in the custody of the Mississippi Department of Corrections. On appeal, Ellis alleges the following errors, as taken verbatim from his brief: (1) the trial court erred by allowing the introduction of other crimes evidence; (2) the trial court erred by denying defense instruction D-5, a testimony impeachment instruction; and (3) the verdict was against the weight of the evidence.

## FACTS

¶2. On February 10, 1998, the Grand Jury of Hinds County returned a two count indictment against Ellis, Kendaryll Robinson, Damien McAffee, Thomas Reese and FNU LNU a.k.a. Mike-Mike on charges of capital murder and armed robbery. The trial of this matter began on June 8, 1999. The State's witnesses

included: Kendaryll Robinson, co-defendant; Cedric Smith, longtime friend of Ellis; Harold Nicholson, the aggravated assault victim; Sergeant Ronald Youngblood, of the Jackson Police Department and John Dial, a firearms expert with the Jackson Police Department.

¶3. Robinson testified that on the evening of July 25, 1997, he, Ellis, Reese, McAfee and Mike-Mike drove to the PaPa Do's club on Medgar Evers Boulevard and parked the car behind the club. The City Package Store and The Little Store businesses were next door to the club. After everyone exited the car, Ellis told them what to do.

¶4. Robinson was to remain at the club as a look out for Ellis. Reese was to wait at the corner of the store and notify Ellis when the owners left the stores. Additionally, Reese was to distract the owners as each left the store. Ellis and Mike-Mike were to hide behind a dumpster in the store parking lot and await Reese's signal.

¶5. While waiting, Robinson heard shots, looked up and saw a man grab his chest, slump over and fall to the ground. Robinson saw Ellis fire several more shots. Robinson then saw Mike-Mike grab a bag and a cash register drawer. Afterward, Ellis and Mike-Mike ran back to the car were the others were waiting. McAfee drove away from the scene.

¶6. Harold Nicholson, owner of the City Package Store, and Thomas Tapp, the owner of The Little Store, were closing their stores for the evening. As Tapp went back to his store to set the alarm, Nicholson continued across the parking lot toward his car. He had a paper sack with the money tray from his cash register under his arm. He was shot in the back prior to reaching his car. As he fell, he heard someone say "I finally got you Harold." Nicholson did not see who shot him. Nicholson testified that he suffered periods of unconsciousness after being shot, but also heard other shots fired. Nicholson could not see Tapp but he heard Tapp groan.

¶7. Sergeant Ronald Youngblood investigated the crime scene and interviewed witnesses. He interviewed Ellis on several occasions. Ellis, who initially denied being present, subsequently admitted to being present, but denied involvement in the shooting.

¶8. Cedric Smith, a long time friend of Ellis, purchased a nine-millimeter Ruger handgun from Ellis a few days after the shooting. After buying the gun, Smith also sold it. After meeting with Sergeant Youngblood, Smith located the purchaser of the gun, retrieved it and turned it over to the police department.

¶9. John Dial, Jackson Police Department firearm and toolmark examiner, conducted tests on the bullet and shell casings recovered from the scene, Tapp's body and the gun recovered by Sergeant Youngblood. Dial determined that the bullet and shell casings used in the shooting were from the same nine-millimeter Ruger previously owned by Ellis.

¶10. The State rested after Tapp's death certificate was introduced into evidence. The defense moved for a directed verdict, which was denied. The defense then rested without putting on any evidence. The jury returned a verdict of guilty. Ellis was sentenced to life without parole in the custody of the Mississippi Department of Corrections. Ellis filed a motion for a new trial or alternatively for a judgment not withstanding the verdict. This motion was denied. Aggrieved with the court's ruling, Ellis perfected this appeal.

## ANALYSIS AND DISCUSSION OF THE LAW

# I.

## The Trial Court erred by allowing the introduction of other crimes evidence.

¶11. Ellis argues that Nicholson's testimony was more prejudicial than probative and should not have been allowed or at the very least a cautionary statement should have been given to the jury. Ellis argues that these errors violated his Fifth, Sixth, and Fourteenth Amendment rights as well as rights guaranteed to him under the Mississippi Constitution.

¶12. The Mississippi Supreme Court has held that "[w]here another crime or act is so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences proof of the other crime or act is admissible." *Ballenger v. State*, 667 So. 2d 1242, 1256-57 (Miss. 1995). The State has a legitimate interest in telling the complete story so as not to confuse the jury, evidence of other crimes or bad acts is admissible for this purpose. *Id.; Neal v. State*, 451 So. 2d 743 (Miss. 1984).

¶13. In the case *sub judice*, the assault and robbery of Nicholson was so intertwined with the murder of Tapp that it can be perceived as a single occurrence. The record indicates the City Package Store and the Little Store shared a common parking lot. Nicholson testified that it was their custom to close both businesses at the same time each evening. It was while Tapp and Nicholson were closing their businesses for the evening that the assault, robbery and murder took place. Additionally, the testimony indicated this double robbery was planned and executed as one event. The admission of Nicholson's testimony did not prohibit Ellis from receiving a fundamentally fair trial but rather painted a complete picture of the events that occurred on the evening of July 25, 1997.

# II.

## The trial court erred by denying defense instruction D-5, a testimony impeachment instruction.

¶14. Ellis argues that refusal of proposed jury instruction D-5 amounted to reversible error. Instruction D-5 read:

> The testimony of a witness or witnesses may be discredited or impeached by showing that on a prior occasion they may have made a statement which is now inconsistent with or contradictory to their testimony in this case. In order to have this effect, the inconsistent or contradictory prior statement must involve matter which is material to the issues in this case.

> The prior statement of the witness or witnesses can be considered by you only for the purpose of determining the weight or believability that you give to the testimony of the witness or witnesses that made them. You may not consider the prior statement as proving the guilt to innocence of the defendant.

¶15. The State objected to the instruction on the grounds that it was poorly worded and confusing. The court denied the instruction stating instruction C-1 covered the information sought by the defendant to be conveyed to the jury. Instruction C-1 read:

> You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, state of mind, demeanor and manner while on the stand. Consider the witness' ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters. Consider the extent to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters. Consider the extent to which it is contradicted by other evidence in the case. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood. After making your own judgment, you will give the testimony of each witness such credibility, if any, as you may think it deserves.

¶16. Jury instructions are to be read as a whole not in isolation. *Laney v. State,* 486 So. 2d 1242, 1246 (Miss. 1986). In *Bell v. State*, 725 So. 2d 836 (Miss. 1998) the defendant offered an instruction that advised the jury that they were the sole judges of the credibility of witnesses and inconsistencies may cause the jury to discredit a witness's testimony. The offered instruction was vague, abstract, and referred to the dangers of relying on the testimony of a particular witness. *Id*. at ¶ 29. The trial court refused to grant the instruction stating that it was adequately covered by other instructions. *Id*. The trial court granted instructions advising the jury that it was the sole judge of credibility of testimony and supporting evidence, an instruction on accomplice testimony advising the jury to consider the testimony of an accomplice with care and caution and a reasonable doubt instruction stating that reasonable doubt may be based on conflicts of testimony. *Id*. On review, the Mississippi Supreme Court agreed with the trial court ruling that "a trial judge is under no obligation to grant redundant instructions." *Id*. "To do so can only create confusion and make it more difficult for the jury to understand the charge." *Id.*

¶17. In the case *sub judice*, the trial court refused instruction D-5 because it was poorly worded and did not properly instruct the jury on the correct law. The trial court did, however, grant instructions on accomplice testimony and reasonable doubt which properly instructed the jury on the applicable law. "Since all instructions are to be read together and if the jury is fairly instructed by other instructions, the refusal of any similar instruction does not constitute reversible error." *Laney* 486 So. 2d at 1246.

¶18. The court properly denied instruction D-5.

### III.

### The verdict was against the weight of the evidence.

¶19. Ellis argues that the evidence was insufficient and too weak to convict him of capital murder. He bases this on the State having presented only one witness to the shooting. This witness had given a prior inconsistent statement regarding the shooting. Ellis argues that because the State did not offer any other direct evidence identifying him as the shooter, the verdict was against the weight of the evidence and the verdict should be reversed.

¶20. The Court is "authorized to reverse only where, with respect to one or more of the elements of the

offense charged, the evidence so considered is such that a reasonable and fair-minded juror could only find the accused not guilty." *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). Substantial facts exist in the record from which the jury could conclude that Ellis was guilty of capital murder.

¶21. Pursuant to Miss. Code Ann. §97-7-19(2)(c) (Supp. 1999) murder while engaged in the commission of robbery is capital murder. The State presented testimony about the events surrounding the robbery and Ellis's presence and participation in the robbery. The State established that Ellis owned the 9mm gun used as the murder weapon. The State also established that Tapp died from a gunshot wound inflicted during this robbery. After considering the evidence before it, the jury convicted Ellis of capital murder. This testimony, if found credible by the jury, could provide substantial evidence to return a verdict of guilty. "Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *White v. State*, 732 So. 2d. 961 (¶20) (Miss. 1999). We cannot say that the verdict was against the weight of the evidence.

¶22. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF ANTWON LESHAY ELLIS OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE TO RUN CONSECUTIVE TO 97-1-95 AND 97-3-215 COUNTS I AND II ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.**