764 So.2d 463 (2000)
Aaron BROWN, Appellant.
v.
STATE of Mississippi, Appellee.
No. 98-KA-00646-COA.
Court of Appeals of Mississippi.
March 28, 2000.
Rehearing Denied June 6, 2000.
Certiorari Denied August 17, 2000.
*465 Edward Blackmon, Canton, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Attorney for Appellee.
BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Aaron Brown has appealed his conviction for murder returned by a Hinds County Circuit Court jury. He raises three issues on appeal. First, he contends that the jury was not properly instructed as to the presumption of innocence and the standard of proof required of the State to overcome that presumption. Secondly, he claims that the prosecuting attorney, in summation, attempted to improperly interject inflammatory and prejudicial social issues into the jury's deliberations. Finally, he claims that the verdict of guilty was against the weight of the credible evidence, entitling him to a new trial. For reasons we will proceed to discuss, we find these issues do not warrant a reversal of Brown's conviction.

I.

Facts
¶ 2. According to the State's evidence, Kenneth Smith was shot to death in the course of an argument in the parking lot of the "Cool Breeze" pool hall. Terri Casnel, the victim's girlfriend, testified at trial that she was a witness to the shooting and said she saw the defendant, Aaron Brown, draw *466 a gun from under his coat and shoot Smith at least three times. (The record indicates that, in fact, Smith was shot four times with a nine millimeter pistol.)
¶ 3. Brown, in his defense, called several witnesses. Rachel Kimbrough, a woman who had been working as a bartender at the Cool Breeze on the night of the shooting, testified that Casnel was inside the building talking to her when the shooting occurred. A police officer who investigated the shooting at the scene reported that Casnel had given a statement to him that she was inside the building when the shooting occurred. Another defense witness, Tracy Bingham, testified that, contrary to Casnel's assertions, he was the sole witness to the shooting, which occurred when he and Smith were talking in the parking lot and they were approached by an unidentified gunman who shot Smith and fled the scene. Brown also called a friend who testified that Brown had picked him up after work and that they had gone to the friend's home for the evening where they remained until after the shooting occurred.

II.

The Weight of the Evidence
¶ 4. We will consider this issue first, since if it is found to have merit, our obligation would be to reverse and remand for a new trial. This would render the remaining issues moot.
¶ 5. A convicted defendant who believes that the weight of the evidence favored a not guilty verdict may assert that belief by filing a new trial motion with the trial court. The trial court is then charged to review all of the evidence in the light most favorable to upholding the verdict. Daniels v. State, 742 So.2d 1140 (¶ 11) (Miss.1999). If the court is convinced that, even viewing the evidence in the light most favorable to the prosecution, a manifest injustice has occurred, the court is obligated to set aside the verdict and order a new trial. White v. State, 732 So.2d 961 (¶ 20) (Miss.1999).
¶ 6. If the court denies the motion, the defendant may seek appellate review of that decision. In that review, the appellate court considers the evidence under the same standard as that imposed on the trial court. Veal v. State, 585 So.2d 693, 695 (Miss.1991). The appellate court must order a new trial if it is satisfied that the trial court abused its discretion in denying the new trial motion. Sturdivant v. State, 745 So.2d 240 (¶ 12) (Miss.1999).
¶ 7. In this case, the critical disputed issue of fact on which this case turned was straightforward. There was no denying that Smith had been shot to death in the Cool Breeze parking lot. The only question was whether Brown was the person who fired the fatal shots. The only evidence presented on that question by the State was the testimony of Terri Casnel, who claimed to have been standing in the doorway of the Cool Breeze when Brown drew a gun and shot Smith repeatedly. Brown's argument that the guilty verdict is against the weight of the evidence is based in large part on the proposition that he succeeded in substantially impeaching Casnel's testimony through the prior inconsistent statement she gave the police on the night of the shooting in which she denied having seen the actual crime committed. Brown also claims that the testimony of the bartender and of the police officer on the scene further supported the proposition that Casnel was inside the bar when the shooting occurred and not in a position to witness the shooting.
¶ 8. Adding additional weight in favor of Brown's innocence, according to his argument, was the testimony of Elmarco McNair that Brown was in his company at home when the shooting occurred, and the testimony of Tracy Bingham that he was an eye-witness to the shooting who could verify that the assailant was not the defendant, Aaron Brown.
*467 ¶ 9. When a criminal case is tried to a jury, the members of the jury act as the finders of fact. McClain v. State, 625 So.2d 774, 781 (Miss.1993). They are charged to listen to the evidence, observe the demeanor of the witnesses, and decide the issue of the credibility of the witnesses and what weight to give to any particular piece of evidence. Bridges v. State, 716 So.2d 614 (¶ 15) (Miss.1998). Unless testimony necessary to support the jury's verdict is so implausible or so substantially impeached as to be unworthy of belief, the jury's decisions in such matters is beyond the authority of a reviewing court to disturb. Boles v. State, 744 So.2d 349 (¶ 8) (Miss.Ct.App.1999).
¶ 10. It is evident in this case that the jurors found Teri Casnel's testimony to be persuasive even in the face of information tending to impeach her veracity. Casnel admitted candidly having made a contradictory statement to police in the immediate aftermath of the shooting, but said that she did so out of fear for her safety. In support of that position, there was evidence that, a short time after giving a statement indicating lack of any knowledge of the assailant, Casnel was taken to police headquarters where she gave a formal statement in which she claimed to be able to identify Brown as the shooter.
¶ 11. Certainly, Casnel's prior inconsistent statement at the scene was admissible to impeach her credibility. M.R.E. 613; Brown v. State, 556 So.2d 338, 341 (Miss.1990). Just as certainly, evidence that she had given a statement implicating Brown on that same evening was admissible to refute an inference of recent fabrication of the version of the facts she gave at trial. M.R.E. 801(d)(1)(B). The testimony of a witness is not necessarily rendered unworthy of belief merely because it has been attacked with some measure of success by one of several means of impeaching the witness's credibility. The impeachment, rather, constitutes information to aid the jury in assessing what weight and worth to assign to that witness's evidence. In this case, we do not think that Casnel's inconsistent statement, for which she offered an explanation and which she substantially modified only a short time after making it, rendered her testimony at trial so unworthy of belief that the jury was obligated to reject it.
¶ 12. Neither do we think that the bartender's testimony that Casnel was talking to her at the time of the shooting necessarily mandated that the jury reject Casnel's evidence. The bartender's own testimony was impeached by evidence that, on the night of the shooting, she related a version of events different from that to which she testified at trial. There was evidence that, on the night of the shooting, the bartender reported that Casnel came running into the bar area after the shooting in an attempt to find sanctuary from the gunfire a scenario more consistent with Casnel's in-court testimony.
¶ 13. During cross examination of the defendant's alibi witness and his purported eyewitness to Smith's shooting, it was developed that neither of these witnesses had ever reported this valuable exculpatory evidence to investigating officers. The State was further able to elicit information from both witnesses indicating that they had a personal friendship with the defendant. This evidence was admissible as an indication of their possible bias in Brown's favor. See M.R.E. 616. In view of the proven connection between these witnesses and the defendant, reasonable jurors could conclude that the long delay by these individuals in making known this information that, if true, effectively exonerated Brown from a murder charge, cast serious doubt on the believability of their testimony. Since that appears a reasonable view of the testimony of these witnesses, we conclude that the jury acted within the range of discretion afforded it in such matters when, as its verdict indicates, it chose to reject the testimony of these witnesses as being improbable and unworthy of belief.
*468 ¶ 14. The testimony of one eyewitness, if found to be credible, can support a conviction. Holmes v. State, 660 So.2d 1225, 1227 (Miss.1995). This fact is not necessarily altered by the existence of, or the sheer number of, witnesses whose evidence tends to contradict the eyewitness's version. It simply creates the endlesslyrepeated trial situation where there is a conflict in the evidence and the finders of fact are called upon to resolve that conflict. In this case, the conflict was resolved by the jury in favor of the version of events related by Terri Casnel. We are unpersuaded that there is any basis under the law to disturb the jury's conclusion as being contrary to the weight of the credible evidence at trial.
¶ 15. Because we have resolved this issue in favor of the State, it becomes necessary for the Court to turn its attention to the two remaining issues raised by Brown in this appeal.

III.

Erroneous Instruction
¶ 16. The defendant offered a proposed instruction to inform the jury of a defendant's entitlement to the presumption of innocence and the State's corresponding duty, before a conviction is warranted, to prove every essential element of the crime beyond a reasonable doubt. When jury instructions were being considered, the prosecution pointed out that the defendant's proposed instruction was essentially identical to the instruction on the same point that was in the court's standard instruction package. The prosecuting attorney went on to state, however, that the court's instruction in several places contained the phrase "beyond a reasonable doubt and to the exclusion of every hypothesis consistent with innocence." He contended that the phrase "and to the exclusion of every hypothesis consistent with innocence" was inappropriate since it was appropriate only in a circumstantial evidence case and, in this case, the State had presented a purported eyewitness to the crime.
¶ 17. Rather than grant the defendant's instruction (which, incidentally, also contained one instance of the circumstantial evidence standard), the court attempted to modify its own instruction by lining out with a marker the phrase "and to the exclusion of every hypothesis consistent with innocence" wherever it appeared in the instruction. Unfortunately, the court, in doing so, committed a clerical error in one instance by failing to line out the entire phrase. As a result, one of the sentences in the instruction read as follows:
Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt hypothesis consistent with innocence that the Defendant is guilty.
(The italicized words were not emphasized in the instruction. Rather, we highlighted them to demonstrate the portion of the circumstantial evidence standard that was mistakenly left in the instruction.)
¶ 18. As Brown points out in his appeal, this clerical error in attempting to modify the court's instruction renders the quoted sentence essentially meaningless. Brown now contends that this error left the jury uninformed as to the proper standard by which it was to determine Brown's guilt or innocence, a fact that requires that his conviction be reversed.
¶ 19. A defendant is entitled to have the jury instructed as to the high burden of proof placed on the State to obtain a conviction in a criminal prosecution. Watson v. State, 465 So.2d 1025, 1031 (Miss.1985). It is evident from the record that the quoted sentence intended to cover this point was confusing because of the clerical error. It also seems likely that the clerical error probably occurred under circumstances where it could not have been detected by defense counsel in the exercise of reasonable diligence at the time since what actually occurred is different *469 from what the trial court intended to do and what the court contemporaneously represented to counsel that it was doing.
¶ 20. Nevertheless, it must be remembered that instructions are read to the jury in open court in the presence of the attorneys before the jury retires to render its verdict. There is no indication that, when the trial court read the instruction as erroneously modified, defense counsel offered any objection or otherwise sought to raise the issue that the instruction as read did not accurately reflect the State's burden and that it did not comport with the trial court's earlier statement as to how it was modifying the instruction. Had defense counsel timely raised the matter, the error would have been quickly detected and easily rectified, thereby pointing out once again the importance of the rule requiring a timely effort by attorneys to bring perceived errors in the proceeding to the attention of the trial court.
¶ 21. In our view, this failure to offer a timely objection to the manner in which the jury was orally instructed constitutes a waiver of the defect which procedurally bars this Court from considering the issue on appeal unless the error was so prejudicial on its face that we are obligated to note it as plain error. Shelton v. State, 445 So.2d 844, 846 (Miss.1984).
¶ 22. In determining whether the error in the instruction is so fundamental that we must consider it as plain error, we begin with the proposition that the jury is charged to consider all instructions as a whole and not to place undue emphasis on any particular instruction. Heidel v. State, 587 So.2d 835, 842 (Miss.1991). In this case, the court's own initial instruction included this admonition: "You are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole."
¶ 23. Besides the offending sentence quoted above, which is admittedly confusing but which passed into the record of this case without drawing the notice of the trial court or the attorneys for either side, the jury's instructions included the following information:
1) A later sentence in that same instruction read, "The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the Jury of his guilt beyond a reasonable doubt."
2) The instruction giving the essential elements of the crime of murder began with the phrase, "The Court further instructs you that if you believe from the evidence in this case, beyond a reasonable doubt, that [followed by a recitation of the essential facts necessary to convict.]"
3) The admonition that the State's proof must establish guilt beyond a reasonable doubt was also contained in an instruction regarding the lesser included offense of manslaughter.
4) Finally, the court instructed the jury as follows:
The court instructs the jury that a reasonable doubt may arise from the whole of the evidence, from the lack of evidence, from the insufficiency of the evidence, but however it may arise, if it arises, it is your sworn duty to find the Defendant "Not Guilty."
¶ 24. When considered in their totality, these instructions served the purpose of fairly acquainting the jury with the standard of proof required of the State to convict this defendant with sufficient clarity to overcome any confusion that might have been caused by the evident clerical error arising from an attempt to modify one sentence in one instruction.
¶ 25. Because we find that the jury was sufficiently informed as to the State's burden of proof, we do not consider this unfortunate, but contemporaneously-undetected, error in one instruction to be the sort of fundamental error that can be raised for the first time on appeal.

*470 IV.

Improper Summation
¶ 26. During closing argument, the prosecuting attorney appeared to be lamenting the fact that the defendant, who was apparently at one time a promising athlete, had fallen so far from his earlier glory as to be a defendant in a murder trial. In doing so, the prosecutor invoked the name of Arthur Ashe and observed that, in New York, they had named a tennis stadium for him, while
here in the City of Jackson, Mississippi, we're building stadiums or something to the murder of innocent victims. And that's what we're here deciding. How many more people are going to be killed in the City of Jackson, Mississippi, and can get up and say I didn't do it.
¶ 27. At that point, defense counsel objected to the course the State's argument was taking. The trial court sustained the objection. Defense counsel then moved for a mistrial, but the trial court denied the mistrial motion.
¶ 28. Now on appeal, Brown claims that the trial court erred when it failed to grant a mistrial because of the prejudicial nature of these remarks. He claims that the argument sought to inflame the jury by improperly invoking such considerations as upholding community values and deterring future criminal activity as a proper reason to return a guilty verdict. Such appeals to broader concerns are certainly improper as an effort to divert the jury from the important but narrow focus of its work, i.e., to determine the guilt or innocence of the defendant based solely on the evidence presented at trial. Dancer v. State, 721 So.2d 583 (¶ 33) (Miss.1998); Turner v. State, 721 So.2d 642 (¶ 13) (Miss.1998); Banks v. State, 725 So.2d 711 (¶ 27) (Miss. 1997).
¶ 29. Though a full understanding of the meaning of the prosecuting attorney's remarks seems elusive, we are sympathetic with the notion that he was somehow attempting to invoke general societal concerns with crime to spur the jury toward conviction. That kind of argument is improper, but not every error in the conduct of a trial requires reversal. Robinson v. State, 733 So.2d 333 (¶ 16) (Miss. Ct.App.1998). It is only those errors that, in some significant way, call into question the fundamental fairness of the trial process that warrant setting aside the verdict of the jury. Dancer, 721 So.2d at 590 (¶ 34). In this case, defense counsel commendably interposed a timely objection before the prosecutor had an opportunity to gather together the threads of this improper but somewhat disjointed argument and make his point with more clarity. The trial court sustained the objection, thereby cutting off the State from any further argument along those lines. There was no request that the jury be admonished to disregard the argument, but it seems plausible that, on hearing the trial court sustain defense counsel's objection, the jury would properly conclude that this tack in the State's argument was improper and would not ponder at great length on exactly the point the prosecution intended to make. This timely interruption of the State's improper argument, in our view, cured any error that might be seen to have arisen. The brief improper remarks that preceded defense counsel's objection simply were not of sufficient prejudicial impact to require a reversal of this conviction.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.