# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-01373-COA

**KENYON WILLIAMS A/K/A KENYON
MARDELL WILLIAMS**
APPELLANT

**v.**

**STATE OF MISSISSIPPI**
APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/19/2020 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | DANIELLA SHORTER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; VACATED AND REMANDED IN PART - 11/15/2022 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McCARTY AND SMITH, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.    Kenyon Williams fired a shotgun into his ex-girlfriend's mobile home five times, striking her three times.  Following a jury trial, Williams was convicted of shooting into a dwelling, unlawful possession of a firearm by a felon, and aggravated domestic violence. The court sentenced Williams as a habitual offender to serve consecutive terms of ten years, ten years, and twenty years in the custody of the Mississippi Department of Corrections.

¶2.    On appeal, Williams's appointed counsel argues that the trial court committed plain error by sentencing him as a habitual offender because the State failed to present competent

evidence of two prior felony convictions. The Attorney General confesses error on this point, and we agree that the habitual offender portions of Williams's sentences must be vacated. Accordingly, we vacate his sentences and remand the case for re-sentencing as a non-habitual offender.

¶3. Williams also filed a pro se supplemental brief in which he raises additional issues. These issues are all without merit. Therefore, Williams's convictions are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶4. Williams and Alicia Brown had known each other for most of their lives and had been in an on-and-off dating relationship prior to December 2018. Williams had lived in Alicia's mobile home in Crystal Springs with Alicia and her children for about four months during their relationship.

¶5. On January 19, 2019, Alicia was away from home when her daughter Tatyanna called her and said that Williams was outside their home. When Alicia returned home, Williams had left. Later that evening, Alicia and Tatyanna were watching television when they heard a knock on Alicia's bedroom window. Alicia immediately suspected Williams and instructed Tatyanna to call the police.

¶6. Alicia looked out her bedroom window and saw Williams standing outside. Although it was dark outside, Alicia could see Williams because her porch light and a "security light" located on a light pole were both on. Williams told Alicia to come outside, but Alicia refused. Williams then raised a shotgun and pointed it at Alicia. When Alicia turned away

from the window, Williams began firing the shotgun through the walls of the home. Alicia heard five shots and was hit three times.

¶7. Deputy Raymond Adams of the Copiah County Sheriff's Department responded to a call regarding the shooting. When he arrived at the scene, he observed holes in the side of the home and found five shotgun shells on the ground outside. Adams testified that the front of the home was illuminated by the porch light and security light when he arrived. Adams entered the home and found Alicia bleeding from gunshot wounds. Both Alicia and Tatyanna identified the shooter.

¶8. A Copiah County grand jury indicted Williams for shooting a gun into a dwelling, Miss. Code Ann. § 97-37-29 (Rev. 2020); possession of a firearm by a felon, Miss. Code Ann. § 97-37-5 (Rev. 2020); and aggravated domestic violence, Miss. Code Ann. § 97-3-7(4)(a)(ii) (Supp. 2016). At trial, Alicia identified Williams as the shooter. In addition, Tatyanna testified that although she did not see Williams on the night of the shooting, she could hear the shooter speaking and was "[c]ertain" that it was Williams's voice. Tatyanna also testified that although she did not see Williams outside the house earlier that day, she recognized his distinctive Buick with modified exhaust pipes. Williams testified in his own defense and denied that he was present at Alicia's home on the day or night of the shooting. The jury found Williams guilty of all three counts, and the court sentenced him as a nonviolent habitual offender to serve consecutive terms of ten years, ten years, and twenty years in the custody of the Mississippi Department of Corrections.

¶9. On appeal, Williams's appointed counsel argues that the trial court committed plain error by sentencing him as a habitual offender without sufficient evidence of his prior convictions and sentences. In addition, Williams filed a pro se supplemental brief raising several issues. The State confesses error as to Williams's sentence but argues that Williams's pro se issues are without merit.

## ANALYSIS

### I. Habitual Offender Sentence

¶10. Mississippi Code Annotated section 99-19-81 provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony unless the court provides an explanation in its sentencing order setting forth the cause for deviating from the maximum sentence, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81 (Rev. 2020).

¶11. "To sentence a defendant as a habitual offender, all that is required is that the accused be properly indicted as an habitual offender, that the prosecution prove the prior offenses by competent evidence, and that the defendant be given a reasonable opportunity to challenge the prosecutor's proof." *Grayer v. State*, 120 So. 3d 964, 969 (¶18) (Miss. 2013) (quotation marks and brackets omitted). "The State has the burden to prove the defendant's habitual offender status beyond a reasonable doubt by producing sufficient evidence" that the

4

defendant has at least two prior convictions and sentences that satisfy the requirements of section 99-19-81. *Short v. State*, 929 So. 2d 420, 426 (¶16) (Miss. Ct. App. 2006).

¶12.    Even in the absence of a timely objection at sentencing, we may review a habitual offender sentence for "plain error" because "[a]n accused has a fundamental right to be free of an illegal sentence." *Grayer*, 120 So. 3d at 968-69 (¶¶14-16). "To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of the trial." *Id*. at 969 (¶15) (brackets and quotation marks omitted).

¶13.    In *Grayer*, even though the defendant (Grayer) failed to object at sentencing, the Supreme Court vacated his habitual offender sentence because the State failed to produce competent evidence of his prior convictions and sentences. *Id.* at (¶17). Grayer's indictment alleged that he was a habitual offender and specifically identified seven prior convictions arising out of five separate incidents. *Id.* at 967 (¶6). During Grayer's sentencing, the State informed the circuit court that it had certified copies of Grayer's prior convictions, which had been provided to defense counsel. *Id.* at (¶7). However, the circuit court stated that there was "no need . . . to present [the convictions] to the court," and the State "failed to place the certified copies into the record or to offer any evidence to support Grayer's habitual-offender status." *Id.* at 967, 969 (¶¶7, 19). For that reason, the Supreme Court held that "the State failed to prove Grayer's prior convictions by competent evidence." *Id.* at 969 (¶19). The Supreme Court further held "that the circuit court committed error, rising to the level of plain

5

error, by sentencing Grayer as a habitual offender without evidence of his prior convictions." *Id.* The Supreme Court vacated Grayer's sentence and remanded for re-sentencing as a non-habitual offender. *Id.* at 970 (¶22).

¶14.    In this case, the State filed a timely "Notice of Enhanced Punishment," stating that it would prosecute Williams as a habitual offender under section 99-19-81 based on two prior convictions and sentences, which the Notice specifically identified. *See* MRCrP 14.1(b)(2) (providing that the State may charge the defendant as a habitual offender by filing a notice of enhanced punishment at least thirty days prior to trial or a guilty plea). During the trial, the State introduced a sentencing order showing that Williams had one prior conviction for possession of stolen property.[1] But during sentencing, the only reference to the habitual offender statute was as follows:

> THE COURT:    I just want to make sure I'm clear in this particular cause number; the State did enhance as a habitual?
>
> [PROSECUTOR]:  We did enhance.

The court then sentenced Williams as a habitual offender without objection. There was no additional discussion or proof of Williams's prior convictions.

¶15.    On appeal, the Attorney General confesses that the trial court committed "plain error" by sentencing Williams as a habitual offender in the absence of any "competent evidence"

---

[1] The State offered the sentencing order to prove that Williams had a prior felony conviction, an element of the offense of unlawful possession of a firearm by a felon. Williams expressly declined to stipulate that he had a prior felony conviction.

6

of a second prior conviction and sentence. *See Grayer*, 120 So. 3d at 969 (¶19). We agree. Furthermore, based on the Double Jeopardy Clause of the Mississippi Constitution, Miss. Const. art 3, § 22, "the State is not entitled to a second chance to prove a defendant's habitual-offender status on remand." *Id.* at 969-70 (¶20). Therefore, we vacate Williams's habitual-offender sentences and remand for re-sentencing as a non-habitual offender.

## II.     Pro Se Issues

¶16.    Williams filed a pro se supplemental brief raising additional issues. Specifically, he argues that his indictment was "void," that the State failed to prove him guilty beyond a reasonable doubt, and that his trial counsel provided constitutionally ineffective assistance. These issues are all without merit.

¶17.    Williams first argues that his indictment failed to charge him with aggravated domestic violence because it did not allege that he caused "serious bodily injury" to Alicia. Williams's indictment charged him with aggravated domestic violence under Mississippi Code Annotated section 97-3-7(4)(a)(ii), alleging that he "did wilfully, unlawfully, feloniously and purposely attempt to cause bodily injury to [Alicia] with a deadly weapon, to-wit: a shotgun, by . . . shooting at [Alicia]." Prior to trial, the court granted the State's motion to amend the indictment to delete the words "attempt to" and "at" from this portion of the indictment.[2] Thus, as amended, the indictment alleged that Williams caused "bodily injury" with a deadly weapon by shooting Alicia. The indictment properly charged Williams

---

[2] On appeal, Williams does not contest the amendment to the indictment.

7

with aggravated domestic violence. Under the statute, when a "deadly weapon" is used, the State is only required to prove that the defendant caused or attempted to cause "bodily injury," not "serious bodily injury." *Id.* Accordingly, this issue is without merit.

¶18.    Next, Williams argues that the State failed to prove him guilty beyond a reasonable doubt because (a) Tatyanna misstated the color of his Buick, (b) the State did not test the shotgun shells collected at the scene for DNA or fingerprints, and (c) the State failed to prove that the outdoor lights were on when the crime occurred. These arguments are essentially challenges to the sufficiency or weight of the evidence, and they are without merit.

¶19.    "The . . . test for sufficiency of the evidence is familiar. We view the evidence in the light most favorable to the prosecution to determine whether rational, reasonable fair-minded jurors could have found that the State proved each essential element of the crime." *Poole v. State*, 46 So. 3d 290, 293 (¶20) (Miss. 2010) (quotation marks and emphasis omitted). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Id.* at 293-94.

¶20.    The evidence in this case was more than sufficient for rational jurors to find Williams guilty beyond a reasonable doubt. "The testimony of a single uncorroborated witness is sufficient to sustain a conviction, even though there may be more than one person testifying to the contrary." *Williams v. State*, 512 So. 2d 666, 670 (Miss. 1987) (citations omitted). Moreover, "[u]nless testimony necessary to support the jury's verdict is so implausible or so

8

substantially impeached as to be unworthy of belief, the jury's [verdict] is beyond the authority of a reviewing court to disturb." *Brown v. State*, 764 So. 2d 463, 467 (¶¶9, 11) (Miss. Ct. App. 2000). Here, Alicia consistently identified Williams as her shooter, Tatyanna's testimony corroborated her identification, and there was nothing implausible or unbelievable about their testimony. The issues that Williams raises with their testimony are, at most, matters of weight and credibility that were for the jury to decide. *Id.* Furthermore, Williams's argument regarding the shotgun shells is without merit. The State is not required "to test every item of evidence collected" but only to disclose it to the defendant, who may then seek to have it tested. *Flaggs v. State*, 999 So. 2d 393, 399 (¶18) (Miss. Ct. App. 2008). In summary, there was sufficient proof to sustain Williams's convictions for shooting into a dwelling, possession of a firearm by a felon, and aggravated domestic violence.

¶21. To the extent that Williams challenges the weight of the evidence, he challenges the trial judge's denial of his motion for a new trial. We review the trial judge's ruling only for an abuse of discretion. *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). Our review is deferential because the "trial judge is in the best position to view the trial." *Id.* at 291 (¶18) (quoting *Amiker v. Drugs For Less Inc.*, 796 So. 2d 942, 947 (¶16) (Miss. 2000)). "The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to [rule on a new trial motion]." *Id.* at 291 (¶18) (quoting *Amiker*, 796 So. 2d at 947 (¶16)).

¶22. When we review the denial of a motion for a new trial, we also afford great deference

to the jury and its verdict. *Id.* at 289 (¶1). The jury is the fact-finder, and this Court will not "assume[] the role of juror on appeal." *Id.* As the Supreme Court made clear in *Little*,

> [w]e do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury. Our role as [an] appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

*Id.*

¶23. We cannot say that the trial judge abused her discretion or that the jury's verdict was against the overwhelming weight of the evidence. Rather, any conflicts in the witnesses' testimony were ordinary issues of weight and credibility for the jury to decide. Accordingly, this issue is also without merit.

¶24. Lastly, Williams argues that his trial counsel provided constitutionally ineffective assistance because he (a) "did not object to [the] void indictment," (b) did not object to Tatyanna's testimony about the kind of car he drove, and (c) "did not object or file motions to dismiss the charges against [him] for no one doing proper test [sic]." "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State,* 288 So. 3d 317, 324 (¶29) (Miss. 2020) (brackets omitted). "This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.* (quotation marks and

other brackets omitted). We also may address such "claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.*

¶25. Here, the record affirmatively shows that Williams's claims of ineffective assistance are without merit. As explained above, Williams's indictment was not "void." In addition, Williams identifies no valid objection to Tatyanna's testimony. Finally, the lack of testing of the shotgun shells is not a basis for an objection or dismissal of charges. Accordingly, Williams fails to meet his burden of proving that he received ineffective assistance of counsel at trial. *See Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. Ct. App. 2008) (stating that the defendant "bears the burden of proving both" "(1) that his defense counsel's performance was deficient, and (2) that his counsel's deficient performance was prejudicial to his defense"); *see also Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

## CONCLUSION

¶26. Williams's pro se challenges to his convictions are without merit. However, as the State concedes, the trial court committed plain error by sentencing Williams as a habitual offender in the absence of competent evidence of more than one prior felony conviction. Accordingly, we affirm Williams's convictions, vacate the habitual portions of Williams's sentences, and remand the case for the trial court to re-sentence him as a non-habitual offender.

¶27. **AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

11

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**