ROBERTS, J.,
for the Court:
¶ 1; On June 28, 2010, a Leake County grand jury indicted Lebrian Dontae Bolton for the murder of Wayne Lewis. Bolton’s trial took place in the Leake County Circuit Court beginning on January 11, 2011, and resulted in Bolton’s conviction for the murder of Wayne Lewis. The Leake *1130 County Circuit Court sentenced Bolton to life imprisonment in the custody of the Mississippi Department of Corrections. Bolton filed a motion for a new trial, which the circuit judge denied. Bolton timely filed his notice of appeal on January 24, 2011.
FACTS AND PROCEDURAL HISTORY
¶ 2. The testimonies of the various witnesses in this case conflict on significant issues. To aid in the analysis and understanding of this case, we will attempt to recite the facts gleaned from the record while pointing out those relevant conflicts.
¶ 3. Early in the day of December 22, 2009, Lewis was allegedly involved in an assault of Cortez Weathers. Later that same afternoon, Bolton, Marchol Hudson (Weathers’s cousin), and Reynaldo Ealy met and discussed the altercation involving Lewis and Weathers. The three men later approached Lewis at his home in Tuscola, Mississippi, to inquire about the reasons for his assault of Weathers.[1] A verbal argument between the men ensued, and Bobbie Ealy, Lewis’s mother, told the trio to leave or she would call the police. The three men begrudgingly complied and went to Miss Osie Ealy’s house (Miss Osie’s) a short distance away. A short time later that same night, Lewis, Tommy Luckett, and Devontae Whittington were visiting at Lewis’s home. Luckett and Lewis sent Whittington to Miss Osie’s house nearby to purchase cigarettes. Whittington returned empty-handed. Whittington informed them that Bolton and Reynaldo were at Miss Osie’s house, took the cigarettes from him, and said Luckett could get the cigarettes from them if he wanted. Luckett went to retrieve the cigarettes, and Lewis followed behind him at a distance. Luckett testified that when he and Lewis arrived at Miss Osie’s, Bolton said he hoped Luckett had not come for what Luckett came for; Luckett said he had come to get cigarettes. Luckett testified that at that time Lewis went inside and bought more cigarettes. As they were leaving, Lewis told Bolton, “You and me slick.” However, Hudson, Reynaldo, and Bolton testified that Lewis had threatened to “get them all” as he walked away with the cigarettes.
¶ 4. According to Bolton’s and Reynaldo’s testimonies, Lewis and Bolton started walking down the three-hundred-feet-long path connecting Miss Osie’s house to Lewis’s house with Bolton making the effort to resolve the argument. Hudson testified that Bolton and Lewis were arguing as they were walking. Luckett and Reynaldo followed behind them at a distance. Bolton and Lewis had begun arguing at the beginning of the path; however, a physical fight began as the men had walked farther down the path. There was disputed testimony that the fight began when Bolton struck Lewis with his Glock .40-caliber weapon causing the weapon to leave Bolton’s hand and land in the path. However, Bolton testified that he was never in possession of a gun but that Lewis took the gun from Hudson’s truck at Miss Osie’s house. Luckett and Reynaldo began fighting shortly thereafter when Reynaldo grabbed Luckett and pulled him back from where Bolton and Lewis were fighting. The fighting continued down the path toward Lewis’s home. Bolton testified, “We [he and Lewis] probably fought for probably [sic] five minutest,] and then we stopped because Reynaldo and ... Luck-ett was [sic] fighting. We stopped and we *1131 all just sat back, and they was [sic] fighting in the trail.” Bobbie, Lewis’s mother, testified she heard a loud commotion outside and decided to get in her car and have her son Lewis drive her somewhere. She then drove the short distance to the path to where the men were. According to Luckett, Bobbie told the men to stop fighting and also asked Lewis to come drive her to her daughter’s house. Both Luck-ett and Bobbie testified that Lewis had walked to the car when Bolton made a comment to Lewis. Then both Bolton and Reynaldo began walking toward the car. According to Bobbie, the fighting resumed between Luckett and Reynaldo, and Lewis went back toward the fight to stop it. Reynaldo testified that Lewis started walking toward Bobbie’s car but turned around and started the fight again. Hudson, who had been following the other men down the path at a distance, arrived on the scene of the fight and fired a shot with his Smith and Wesson .40-caliber gun. It was uncertain as to whether Hudson fired the shot in the air or into the ground. The shot temporarily stopped the fighting. According to Bobbie and Luckett, Bolton, who was standing near Hudson, took the gun from Hudson, said “I’ll get that n* * * and fired two shots into Lewis’s chest. Bolton, Hudson, and Reynaldo all testified that after Hudson shot to stop the fight, Lewis advanced toward Bolton and hit him in the eye. Bolton further testified that he stumbled into Hudson, grabbed Hudson’s gun from Hudson’s back pocket, and shot Lewis twice as Lewis was continuing to advance on him. Bolton also claimed that he thought Lewis had a gun in his hand at the time Lewis was advancing on him. No other witness confirmed that Lewis had a gun or any other weapon on him at the time of the fight. Bolton, Hudson, and Reynaldo dispute Bobbie’s and Luckett’s testimony that Bolton said “I’ll get that n* * * * ” before he shot Lewis. Bolton maintained that he had shot Lewis in self-defense because he believed that Lewis had taken Bolton’s Glock .40 caliber pistol from where he left it in Hudson’s truck at Miss Osie’s and that Lewis was now using it to attack him.
¶ 5. After the two shots were fired, Bolton and Hudson fled the scene. Reynaldo testified that he stayed and held Lewis’s hand; however, Bobbie and Luckett testified that Reynaldo left the scene as well after the shots were fired. Bolton admitted that he threw Hudson’s Smith and Wesson .40-caliber gun out of the truck window as he fled from the scene. The following day, Bolton voluntarily surrendered himself to police. A photograph taken of Bolton at the time he surrendered to the police indicated a large, swollen bruise under his left eye. He attributed this injury to Lewis having hit him in the face with his gun.
¶ 6. Bolton was indicted by a Leake County grand jury for the'murder of Lewis pursuant to Mississippi Code Annotated section 97 — 3—19(l)(a) (Rev.2006). The State offered testimony from Luckett, Hudson, Reynaldo, and Bobbie. The State also offered the testimony of two members of the Leake County Sheriffs Office. Deputy Toby Gill testified he was involved in the recovery of evidence the night of December 22, 2009, and he recovered a .40-caliber Glock approximately five to ten feet from Lewis. This gun appeared to belong to Bolton. Deputy Gill also found a spent shell casing approximately five to ten feet away from Lewis, a live round approximately twenty-five to thirty feet away from Lewis, and a knife approximately one to two feet away from Lewis. Investigator Michael Harper testified that the recovered Glock was not the weapon that had fired the recovered spent shell casing and that the Glock weapon had no latent prints on it. Hudson’s .40-caliber *1132 Smith and Wesson gun believed to be the weapon that fired the spent shell casing was never recovered. Investigator Harper testified that the autopsy showed Lewis had died of two gunshot wounds, but no projectiles were found in his body.
¶ 7. The defense presented testimony from Reynaldo, and Bolton testified on his own behalf. Bolton’s primary defense was that of self-defense, and he claimed that Lewis was the aggressor. After hearing all the conflicting testimony, the jury convicted Bolton of murder, and the circuit court sentenced him to life imprisonment.
¶ 8. Bolton raises the following three issues on appeal:
I. The [circuit] court erred by its failure to grant Bolton’s motion for a directed verdict at the close of the State’s case and [its subsequent] denial of Bolton’s motion for a new trial.
II. The evidence presented at trial is insufficient to support a murder conviction beyond a reasonable doubt[,] and at most, Bolton is only guilty of manslaughter.
III. The ... jury was improperly instructed on the law of self-defense as mandated by case law of [Mississippi].
ANALYSIS
¶ 9. Although Bolton raises three issues on appeal, we find his second issue to be dispositive; therefore, we will only address this issue. Bolton alleges that the evidence was insufficient to support a murder conviction and “at most, [he] is only guilty of manslaughter.” It appears at first glance that Bolton is challenging the sufficiency of the evidence for a murder conviction; however, a more thorough reading of his brief shows that his argument is focused on the lack of a manslaughter jury instruction given at trial.
¶ 10. “It is well settled that jury instructions generally are within the discretion of the trial court,” and the appropriate standard of review is abuse of discretion. Newell v. State, 49 So.3d 66, 78 (¶ 20) (Miss.2010). Further,
Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case[;] however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Moore v. State, 64 So.3d 542, 545 (¶ 10) (Miss.Ct.App.2011) (quoting Austin v. State, 784 So.2d 186, 192 (¶ 18) (Miss.2001)).
¶ 11. Bolton’s requested jury instruction D-10 contained the following language:
The Court instructs the jury that the killing of a human being without malice, by the act, procurement, or culpable negligence of another, shall be manslaughter. In [the] event that you do not find the Defendant guilty as charged but do believe from the evidence beyond a reasonable doubt, that the Defendant is guilty of manslaughter, then it is your sworn duty to find the Defendant, [Bolton], guilty of manslaughter.
The trial transcript reveals that the circuit court judge refused jury instruction D-10 stating: “It’s not a culpable negligence instruction. I’m going to refuse it.” The State asked the circuit court judge if he was not going to give Bolton’s requested jury instruction D-8 “that has the manslaughter option[.]” The circuit court judge replied, “I refused it.” The jury never received a manslaughter instruction *1133 although it did receive a self-defense instruction. Ultimately, however, the jury was only given two options: guilty of murder or not guilty.
¶ 12. An indictment for murder encompasses the lesser-included charge of manslaughter. State v. Shaw, 880 So.2d 296, 304 (¶ 26) (Miss.2004). However, when the evidence only supports a verdict of murder, the circuit court judge should refuse a manslaughter instruction. Ruffin v. State, 444 So.2d 839, 840 (Miss.1984). The Mississippi Supreme Court stated in Mease v. State, 539 So.2d 1324, 1330 (Miss.1989) (quoting Harper v. State, 478 So.2d 1017, 1021 (Miss.1985)):
a lesser included offense instruction should be granted unless the trial judge — and ultimately this Court — can say, taking the evidence in the light most favorable to the accused and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).
Lastly, “[a] defendant is entitled to have an instruction given to the jury presenting his theory of the case even when ‘the evidence that supports it is weak, inconsistent, or of doubtful credibility.’ ” Banyard v. State, 47 So.3d 676, 682 (¶ 17) (Miss.2010) (quoting Ellis v. State, 778 So.2d 114, 118 (¶ 15) (Miss.2000)). If the record shows any evidence that can support a lesser offense, then the circuit court should give the lesser-offense instruction. See Ormond v. State, 599 So.2d 951, 961 (Miss.1992); Mease, 539 So.2d at 1329-30. Based on the evidence presented to us, we hold the circuit court judge erred in failing to give a manslaughter instruction.
¶ 13. Manslaughter has been defined by the Mississippi Legislature as “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense.... ” Miss.Code Ann. § 97-3-35 (Rev.2006). The Legislature has also provided a general manslaughter statute found in Mississippi Code Annotated section 97-3-47 (Rev. 2006), which states: “Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.” Viewing the evidence in a light most favorable to Bolton, a reasonable jury could have found him guilty of only manslaughter. Bolton’s testimony at trial was Lewis was the initial aggressor in the altercation. His testimony was supported by Reynaldo’s and Hudson’s testimonies that Lewis had struck Bolton in the eye immediately before the shooting occurred. Bolton’s mug shot was admitted into evidence at trial and showed him with a swollen, black eye consistent with his theory that Lewis had struck him in the eye. Bolton also testified that he was attempting to resolve the dispute with Lewis. The jury was given the option of finding Bolton guilty of murder or not guilty for acting in self-defense; however, they were not given the option to find Bolton guilty of manslaughter under Mississippi Code Annotated sections 97-3-35 or 97-3-47.
¶ 14. As Bolton points out in his brief, Mississippi recognizes the imperfect self-defense theory, providing “that the defendant killed the deceased without malice, under the bona fide belief, but without reasonable cause therefor, that it was necessary for him to do so in order to prevent the appellant [sic] from inflicting death or great bodily harm upon him.” Wade v. *1134 State, 724 So.2d 1007, 1011 (¶ 12) (Miss.Ct. App.1998) (quoting Lanier v. State, 684 So.2d 93, 97 (Miss.1996)) (emphasis added). A reasonable jury could have found that although Bolton’s belief of impending great bodily harm or death was not reasonable, there existed a bona fide belief that his life was in danger because Lewis was attacking him with a gun, and Bolton, therefore, could be guilty only of manslaughter. Further, a reasonable jury may well have concluded Bolton fatally shot Lewis twice, without malice aforethought or deliberate design, and without authority of law contrary to Mississippi Code Annotated section 97-3-47. However, if the jury believed Bobbie’s and Luckett’s testimonies about Bolton’s statement made immediately before shooting Lewis, a murder verdict would have been appropriate.
¶ 15. As we thoroughly outlined in the facts section of this opinion, there is much conflicting testimony about what occurred between Lewis and Bolton the night of the incident. However, keeping in mind the correct standard of review when determining an accused’s entitlement to a lesser-included offense instruction, we find there was sufficient evidence in the record to support a manslaughter instruction and that the circuit court judge committed reversible error in refusing Bolton a manslaughter instruction. Therefore, we reverse and remand this case to the circuit court for a new trial before a properly instructed jury.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, RUSSELL AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., CONCURS IN PART AND IN THE RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. The three men had stopped by Lewis’s home earlier that day and talked with Lewis's stepfather about the altercation because Lewis was not home. Lewis's stepfather indicated he would discuss the altercation with Lewis.