# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00743-COA

**HAMIN SHAHEED A/K/A HAMIN SHAHEED II**  **APPELLANT/CROSS-APPELLEE**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE/CROSS-APPELLANT**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/28/2015 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | BRANDON ISAAC DORSEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF FIRST-DEGREE MURDER AND SENTENCED TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH ALL BUT TWENTY YEARS SUSPENDED |
| DISPOSITION: | AFFIRMED IN PART; VACATED AND REMANDED IN PART - 12/13/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     Hamin Shaheed shot and killed his girlfriend's ex-boyfriend during an altercation at his girlfriend's apartment complex.  A Hinds County jury convicted him of first-degree murder, and the circuit judge sentenced him to life in the custody of the Mississippi Department of Corrections (MDOC), with all but twenty years suspended.  On appeal,

Shaheed argues that there was insufficient evidence to support his conviction, that his conviction is against the overwhelming weight of the evidence, and that the circuit judge erred by denying his requests for "stand your ground" and castle doctrine jury instructions. On cross-appeal, the State argues that the circuit judge lacked authority to suspend any part of Shaheed's life sentence and that Shaheed could only be sentenced to life in prison.

¶2.     There was sufficient evidence to support Shaheed's conviction for deliberate design murder, and the circuit judge did not abuse her discretion in denying the jury instructions that Shaheed requested.  In addition, we agree with the State that the circuit judge erred by partially suspending Shaheed's sentence.  Accordingly, we affirm Shaheed's conviction but remand for the circuit court to impose a life sentence with no part suspended.

## FACTS

¶3.     On September 15, 2013, Shaheed was visiting his girlfriend, Lanisha Gardner, in her second-floor apartment. Around 12:30 a.m., Trinton Truss—who was previously romantically involved with Gardner—came to Gardner's apartment and banged on the door. Without opening the door, Gardner told Truss that her boyfriend was sleeping over and that he should leave.  By the time Gardner opened the door to talk to Truss, Truss was walking away from the door, throwing the "finger sign."

¶4.     Around 10:30 a.m., Truss returned to Gardner's apartment and banged on the door again.  Shaheed started to answer the door, but Gardner, who had seen Truss through the window, stopped him.  Gardner knew that Truss carried a gun, and she was afraid that there would be trouble between the two men, who had never met.  Through the window, Shaheed

2

saw Truss cock his gun, and Gardner heard the click. Shaheed and Gardner then decided that Gardner should go outside and persuade Truss to leave.

¶5.     As soon as Gardner opened her door, Truss began talking to her. Gardner waved Truss away from the door and motioned for him to walk down the stairs and away from the apartment. She and Truss left the breezeway of the apartments and walked down the stairs and out onto the sidewalk. According to Gardner, Truss was upset, "talking erratic," and asking why her boyfriend was there. Truss stated that he thought that he and Gardner were in love, and he told her to "shut up" whenever she asked him to leave. During this exchange, Gardner was facing Truss with her back to the stairs to her apartment.

¶6.     Still in the apartment, Shaheed heard yelling and looked for Gardner and Truss from the apartment windows. Unable to see either of them, Shaheed left the apartment with his gun on his hip. He testified that he approached Truss and Gardner and asked, "Is there a problem? What's going on? Are you okay?" According to Shaheed, Truss responded, "Ain't shit going on, my nigga. What's up." Shaheed and Gardner both testified that Truss then reached for his pistol, which was inside his waistband.

¶7.     Truss and Shaheed then struggled. Shaheed claims that he was only trying to prevent Truss from drawing his gun. But according to Shaheed, Truss broke free and again attempted to draw his gun. Shaheed then pulled his own gun and shot Truss three times in the head. After shooting Truss, Shaheed fled the scene.

¶8.     Tijuana Collins, another resident of the apartment complex, was the only other eyewitness to the shooting. At trial, she testified that she saw Truss and Shaheed tussling and

3

that Truss "pulled his hand up and [Shaheed] shot him."

¶9.    Truss was taken to the hospital but died from his wounds. Officer Robert Bufkin of the Jackson Police Department (JPD) testified that a gun was recovered from Truss's body at the hospital. Bufkin testified that the gun was "locked and loaded, ready to go." JPD Officer Obie Wells also testified that a gun was found in Truss's pants "in between his legs."

¶10.    A grand jury indicted Shaheed for first-degree murder. At trial, Shaheed stipulated that he shot Truss and caused his death. After a three-day trial, the jury found Shaheed guilty of first-degree murder.

¶11.    Post-trial, Shaheed filed motions for a judgment notwithstanding the verdict and a new trial, but the trial court denied his motions. The trial court sentenced him to life imprisonment, "with all suspended except 20 years." Shaheed appeals his conviction, and the State cross-appeals the partial suspension of his life sentence.

## DISCUSSION

### I.    Weight and Sufficiency of the Evidence

¶12.    Shaheed argues that he is entitled to a judgment of acquittal or, in the alternative, a new trial because, in his view, no reasonable juror could have found that he did not act in self-defense. Therefore, he argues that there is insufficient evidence to support a conviction for first-degree murder or, at the very least, that the conviction is against the overwhelming weight of the evidence. When addressing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

4

beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). The issue is not whether *we* would have found Shaheed guilty based on the evidence presented at trial; rather, his conviction must be affirmed if the evidence was sufficient for "any rational trier of fact" to have returned a guilty verdict. *Id.* "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* at 844 (¶18). The evidence should be "[v]iewed in the light most favorable to the verdict," and we will affirm unless "[t]he trial court . . . abuse[d] its discretion in denying a new trial." *Id*. at (¶19).

¶13.    The testimonies of Shaheed and Gardner, though challenged or impeached in some respects at trial, generally support Shaheed's claims that Truss reached for his gun first; that Shaheed struggled with Truss in an effort to keep him from pulling his gun; and that Shaheed shot Truss in self-defense only after Truss broke free and again reached for his gun. The only other witness to the shooting, Collins, a resident of another apartment in the complex, testified at trial, "I seen two guys tussling. The next thing I know, [Truss] pulled his hand up and [Shaheed] shot him." Collins was some distance away from the men when Truss was shot, she did not see what led up to their "tussling," and at trial she never clarified her ambiguous testimony that Truss "pulled his hand up." Collins did not see Truss's gun, but it was undisputed that he had a gun on his person. If this were all of the evidence in the record, it is possible that Shaheed's conviction for deliberate design murder would have to

5

be reversed.

¶14. However, JPD Detective Jermaine Magee testified that Shaheed shot Truss while Truss "was trying to defuse the situation [by] raising his hands and being advised that he didn't want any part of the altercation." On cross-examination, Magee again testified that Shaheed shot Truss while Truss was trying to defuse the situation by "raising his hands and moving away from" Shaheed. Magee was not present when Truss was shot; rather, he testified—without objection—based on what Collins told him during an interview at the crime scene. Magee also testified—without objection—that Shaheed displayed his gun as he approached Truss, but Truss never displayed his gun. This testimony was based on his interviews with Collins and Gardner.

¶15. Before Magee took the stand, JPD Corporal Sandra Dalton had given similar testimony. Shaheed objected to Dalton's testimony on hearsay grounds, but his objections were overruled. Shaheed did not assert any similar objection to Magee's testimony. Nor did Shaheed request or receive any sort of continuing objection or raise the issue again at any point at trial. Also, on appeal Shaheed has not challenged the trial court's evidentiary rulings or the admissibility of Dalton's or Magee's testimony.

¶16. "[U]nobjected-to hearsay evidence, once received by the court and presented to the jury, becomes competent evidence and may aid in supporting a verdict the same as any other competent evidence." *Veal v. State*, 585 So. 2d 693, 697 (Miss. 1991). "Hearsay evidence, where admitted without objection, may properly be considered and given its natural and logical probative effect, as if it were in law competent evidence. Hearsay evidence admitted

without objection may be regarded as sufficient to establish a fact in controversy." *Burns v. State*, 438 So. 2d 1347, 1350 (Miss. 1983) (quoting *Citizens Bank of Hattiesburg v. Miller*, 194 Miss. 557, 566, 11 So. 2d 457, 459 (1943)) (brackets, ellipsis omitted). The McCormick treatise on evidence elaborates:

> If [inadmissible] testimony is received without objection, it becomes part of the evidence in the case and is usable as proof to the extent of its rational persuasive power. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. The inadmissible evidence, unobjected to, may be relied on in argument, *and alone or in part it can support a verdict or finding. At the trial court level, a party may rely on the evidence to defeat a directed verdict motion; and on appeal, the party may use the evidence to uphold the legal sufficiency of the evidence to support a judgment.* This principle is almost universally accepted. . . . [This principle] is most often invoked with respect to hearsay . . . .

*McCormick on Evidence* § 54 (Kenneth S. Broun ed. 7th ed. 2013) (emphasis added; footnotes omitted).

¶17. In general—and subject to numerous exceptions—hearsay is inadmissible because it is unsworn, because the declarant cannot be cross-examined, and/or because the jury cannot observe the declarant's demeanor to assess his or her truthfulness or reliability. These are all issues related to the trustworthiness or reliability of hearsay. *See* Parham Williams, *Williams on Mississippi Evidence* § 8.01 (2016). Hearsay is *not* excluded because it is irrelevant or lacks probative value. If that were the case, hearsay would be excluded under Mississippi Rules of Evidence 401 and 402, and the "hearsay rule" would be unnecessary. Rather, hearsay may have probative value, and once it is admitted without objection, the jury—not a reviewing court—must decide what weight to give it. *See Chambers v. State*, 711 S.W.2d 240, 246 (Tex. Crim. App. 1986). "When a criminal case is tried to a jury, the

7

members of the jury act as the finders of fact" "and decide . . . what weight to give to any particular piece of evidence." *Brown v. State*, 764 So. 2d 463, 467 (¶9) (Miss. Ct. App. 2000).

¶18. Therefore, in this case, there was competent evidence before the jury that Shaheed approached Truss with his gun drawn and then shot Truss while Truss was backing away with his hands raised in an attempt to defuse the argument. This was sufficient to support the jury's verdict that Shaheed murdered Truss with deliberate design and not in self-defense. *See* Miss. Code Ann. § 97-3-19(1)(a) (Supp. 2016) ("The killing of a human being without the authority of law by any means or in any manner . . . [w]hen done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder . . . ."). Whether we would have returned the same verdict on the evidence presented is not the relevant question at this stage; rather, viewing the evidence in the light most favorable to the verdict, the only issues are whether there was sufficient evidence for a rational trier of fact to have returned the verdict and whether the trial judge abused her discretion by ruling that the verdict was not contrary to the overwhelming weight of the evidence. Based on the testimony discussed above, there was sufficient evidence to support the verdict, and the trial judge did not abuse her discretion by denying Shaheed's motion for a new trial.

¶19. The dissent[1] argues that the trial judge committed "plain error" by not sua sponte preventing Magee's testimony about what Collins and Gardner told him. On that basis, the dissent would exclude Magee's (and Dalton's) testimony from consideration and hold that

---

[1] The separate opinion is a dissent as to this issue, so we refer to it as "the dissent."

8

the remaining evidence is insufficient to sustain Shaheed's conviction for first-degree murder. We disagree with the dissent's approach for at least two reasons.

¶20. First, as noted above, Shaheed did not merely fail to object to Magee's testimony; his own attorney elicited the incriminating hearsay again on cross-examination.[2] "[A] criminal defendant who fails to object to evidence introduced by the State may still have the issue reviewed on appeal for plain error. *However, a criminal defendant who affirmatively introduces evidence himself may not then complain on appeal that he introduced that evidence.*" *Pascagoula-Gautier Sch. Dist. v. Bd. of Supervisors of Jackson Cty.*, No. 2014-CA-01774-SCT, 2016 WL 6125423, at *6 n.9 (Miss. Oct. 20, 2016) (emphasis added; citation omitted); *see also Fleming v. State*, 604 So. 2d 280, 289 (Miss. 1992) ("It is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial."); Williams, *supra*, at § 8.04. Thus, even under the plain error doctrine, Shaheed cannot complain of testimony that his own attorney elicited.

---

[2] On cross-examination, Magee testified as follows:

Q.    And you used these magical words that [Truss] tried to defuse the situation. What did he do to defuse it?

A.    Well, through the investigation it was learned that he was raising his hands and moving away from [Shaheed].

Q.    Who told you that?

A.    It was one of the witnesses who advised.

Q.    What witness was that?

A.    Ms. Collins.

¶21. Second, "in order to determine if plain error has occurred, *we must determine if the trial court has deviated from a legal rule*, whether that error is plain, clear, or obvious, and whether the error has prejudiced the outcome of the trial." *Green v. State*, 183 So. 3d 28, 31 (¶6) (Miss. 2016) (emphasis added; brackets, quotation marks omitted). No "legal rule" requires a trial judge to exclude hearsay in the absence of an objection. Trial judges are not expected to strike or exclude hearsay sua sponte. Whether to object is a decision left to the discretion of counsel, who may have strategic reasons for not objecting. The dissent's approach would require a trial judge to insert herself into the role of counsel and sua sponte raise hearsay objections on the defendant's behalf (or risk subsequent reversal based on "plain error"). Because no "legal rule" requires that of a trial judge, the judge in this case committed no error—plain or otherwise—by not acting sua sponte to prevent or strike Magee's testimony. And taking into account Magee's testimony, there is sufficient evidence to sustain the conviction.

## II. Jury Instructions

¶22. We review the trial court's grant or refusal of jury instructions under an abuse-of-discretion standard. *Burleson v. State*, 166 So. 3d 499, 509 (¶28) (Miss. 2015). "Jury instructions must be read as a whole to determine if they fairly announce the law." *Id.* (quoting *McInnis v. State*, 61 So. 3d 872, 875 (¶10) (Miss. 2011)). A trial court may refuse a jury instruction where it "incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991).

10

¶23. On appeal, Shaheed challenges the trial court's denial of two instructions. The first, D-19, stated:

> The Court instructs the jury that a person is under no duty to retreat and avoid the necessity of using deadly force where otherwise a homicide is committed in self-defense.
>
> If you find from the evidence that Hamin Shaheed acted in self-defense because he had reasonable grounds to fear Truss . . . and that [he] believed that he would suffer great personal injury and that there was imminent danger of the injury occurring then Hamin Shaheed would have no duty to retreat, whether he could have done so with safety or not.

¶24. The trial judge did not abuse her discretion by denying this "stand your ground" instruction. *See Spires v. State*, 10 So. 3d 477, 484 (¶30) (Miss. 2009). The Mississippi Supreme Court and this Court have held that it is within the trial judge's discretion to refuse a "stand your ground" instruction when the defendant's own testimony is that he had no time or opportunity to retreat, and there is nothing in the evidence to suggest to a reasonable juror that the defendant could have retreated but did not do so. *See id.* at 485 (¶¶36-37); *Thomas v. State*, 145 So. 3d 687, 694-95 (¶¶27-32) (Miss. Ct. App. 2013). That is the case here. Shaheed's version was that he and Truss struggled; that Truss broke free and immediately reached for his pistol, which was in his waistband; and that he quickly shot Truss only to prevent Truss from shooting him. The State's version was that Shaheed shot Truss in the head as Truss backed away with his hands raised. Neither version or any other evidence in the record pointed to an opportunity to retreat. Furthermore, other instructions adequately covered the general rules of law pertaining to self-defense. Accordingly, the trial judge did not abuse her discretion by denying Shaheed's proffered "stand your ground" instruction.

*See Spires*, 10 So. 3d at 485 (¶¶36-37); *Thomas*, 145 So. 3d at 694-95 (¶¶27-32).

¶25.    Shaheed also argues that the trial judge erred by denying D-21, which was based on the "castle doctrine," codified in Mississippi Code Annotated section 97-3-15(3) (Supp. 2016).  Shaheed's proposed instruction D-21 stated:

> Hamin Shaheed's act of killing Trinton Truss is justifiable if Hamin Shaheed killed Trinton Truss while resisting Trinton Truss's attempt to unlawfully kill Hamin Shaheed or to commit a serious crime against Hamin Shaheed and while Hamin Shaheed was in the immediate area of a dwelling.
>
> Hamin Shaheed is presumed to have reasonably feared death, great bodily harm, or a serious crime being committed against him if Trinton Truss (1) was unlawfully and forcibly entering; (2) had unlawfully and forcibly entered; or (3) was removing or had unlawfully removed Hamin Shaheed from the immediate area of a dwelling.  The presumption does not apply if Trinton Truss had a right to be in the immediate area of a dwelling or if Hamin Shaheed was committing a criminal act.

¶26.    The trial judge did not abuse her discretion in refusing this instruction because Shaheed was not in the "immediate premises" of a "dwelling" when he shot Truss.  Miss. Code Ann. § 97-3-15(3).  Gardner led Truss away from her front door, out of the apartments' breezeway, down a flight of stairs, and around the corner of the apartment building before they stopped to talk.  Truss went with Gardner voluntarily, and he was no longer in the "immediate premises" of a dwelling, so Shaheed was not entitled to a castle doctrine instruction.

¶27.    Shaheed argues that this case is analogous to *White v. State*, 127 So. 3d 170, 176-77 (¶¶19-23) (Miss. 2013), in which the Supreme Court held that a defendant was entitled to a castle doctrine instruction when she had been accosted next to her car in a driveway that she shared only with her roommates and the residents of an adjacent mobile home.  However,

12

*White* is distinguishable, as Shaheed shot Truss in a common area of a large apartment complex, down the stairs and around the corner from the apartment where he had spent the night. This area was not in the "immediate premises" of Gardner's dwelling.

¶28. We also note that the requested instruction was not supported by the evidence for the additional reason that there was no evidence that Truss unlawfully and forcibly entered Gardner's dwelling or its "immediate premises." *See* Miss. Code Ann. § 97-3-15(3). Gardner voluntarily went outside to speak with Truss, and Truss voluntarily went with her down the stairs and around the corner. The altercation occurred only after Shaheed left the apartment, walked down a flight of stairs and around the corner, and approached Truss. There is no evidence in the record that Truss entered, or was in the process of entering, a dwelling unlawfully and forcibly. Accordingly, the trial judge did not abuse her discretion by denying the requested instruction.

### III. Sentence

¶29. On cross-appeal, the State argues that the circuit judge lacked authority to partially suspend Shaheed's life sentence.[3] Shaheed was convicted of first-degree murder, and "[e]very person who shall be convicted of first-degree murder shall be sentenced by the court to imprisonment for life in the custody of the Department of Corrections." Miss. Code Ann. § 97-3-21(1) (Rev. 2014). A circuit court has the authority "to suspend the imposition or execution of [a criminal] sentence" "*except in a case where a death sentence or life*

---

[3] If the defendant appeals his conviction, the State may file a cross-appeal raising alleged errors in the imposition of his sentence. *See* Miss. Code Ann. § 99-35-103(c) (Rev. 2015); *Pool v. State*, 724 So. 2d 1044, 1048-49 (¶¶23-27) (Miss. Ct. App. 1998).

13

*imprisonment is the maximum penalty which may be imposed*." Miss. Code Ann. § 47-7-33(1) (Rev. 2015) (emphasis added). Since life imprisonment is the applicable sentence for first-degree murder, the circuit court had no authority to suspend any part of Shaheed's life sentence. *See Hayes v. State*, 887 So. 2d 184, 186 (¶6) (Miss. Ct. App. 2004); *Marshall v. Cabana*, 835 F.2d 1101, 1103 (5th Cir. 1988); Miss. Att'y Gen. Op., 2000-0239, 2000 WL 799997 (May 5, 2000). Accordingly, the circuit court exceeded its authority by suspending all but twenty years of Shaheed's life sentence. We vacate Shaheed's sentence and remand the case for the circuit court to impose the sentence required by law.

**CONCLUSION**

¶30. There is sufficient evidence to support Shaheed's conviction, the jury's verdict is not against the overwhelming weight of the evidence, and the trial judge did not abuse her discretion in denying the "stand your ground" and castle doctrine instructions that Shaheed requested. Accordingly, Shaheed's conviction is affirmed. The trial judge did err by partially suspending Shaheed's life sentence. Accordingly, we vacate Shaheed's sentence and remand the case for the circuit court to impose a life sentence with no part of the sentence suspended.

¶31. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF FIRST-DEGREE MURDER IS AFFIRMED. THE SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH ALL BUT TWENTY YEARS SUSPENDED IS VACATED, AND THIS CASE IS REMANDED FOR RESENTENCING CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**GRIFFIS, P.J., BARNES, ISHEE, CARLTON AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT**

**SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND FAIR, J.**

**JAMES, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶32. Because I disagree with the majority that uncorroborated hearsay is legally sufficient evidence to support a murder conviction, I respectfully dissent from the majority's finding that the evidence supporting the murder conviction is legally sufficient. I agree with the majority's conclusion and analysis as to the jury instructions and the sentencing. I would reverse the murder conviction, find Shaheed guilty of manslaughter, and remand the case to the trial court for resentencing.

¶33. To convict Shaheed of murder, the State had to prove that Shaheed (1) killed Truss (2) "without authority of law" (3) "with deliberate design to effect" Truss's death. Miss. Code Ann. § 97-3-19(1)(a) (Supp. 2016). The evidence at trial was insufficient to show that Shaheed deliberately designed Truss's death. Shaheed's indictment for murder, however, served as notice of the lesser-included offense of manslaughter. *Id.* § 97-3-19(3). To prove manslaughter, the State had to show that Shaheed (1) killed Truss (2) without malice (3) "under the bona fide belief, but without reasonable cause therefor, that it was necessary for him to do so in order to prevent [Truss] from inflicting death or great bodily harm upon him." *Bolton v. State*, 87 So. 3d 1129, 1133 (¶14) (Miss. Ct. App. 2012); Miss. Code Ann. §§ 97-3-35, -47 (Rev. 2014). Because the evidence is legally sufficient to support a conviction of manslaughter, I would find Shaheed guilty of manslaughter.

¶34. The Mississippi Supreme Court, in *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss.

15

2005), detailed the appellate courts' review of a question of the sufficiency of the evidence:

> [T]he critical inquiry is whether the evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." However, this inquiry does not require a court to
>
>> "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
>
> *Jackson v. Virginia*, 443 U.S. 307, 315, (1979) (citations omitted) (emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984)); However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Edwards*, 469 So. 2d at 70.

(Citations omitted).

## MURDER

¶35. Because there was insufficient evidence presented at trial to support the intent element of murder, the evidence is legally insufficient to support a conviction of murder. At trial, three eyewitnesses testified: Shaheed, Gardner, and Collins. None of the uncontradicted eyewitness testimony demonstrated that Shaheed deliberately designed Truss's murder or intended to murder Truss. The remaining evidence at the trial is also legally insufficient to

16

support Shaheed's murder conviction.

¶36. Shaheed's uncontradicted trial testimony demonstrates that he lacked the intent to murder Truss. On direct examination, Shaheed testified:

Q. And when you looked out the window, what did you see?

A. Truss was standing at the door with a pistol in his hand and [he] cocked the gun.

Q. . . . [D]id you and [Gardner] decide to do anything? . . .

A. Well, she stated that she knew who he was, and I told her, you know, go outside and handle the situation.

. . . .

Q. What happened to make you go downstairs eventually?

A. Well, while I'm in the room, I hear a bunch of yelling coming from a male. And I look out the window, and I can't—you know, I couldn't see her or him out of the bedroom window. And I go to living room window, I couldn't see []either of them, so that's when I went outside.

. . . .

Q. And at the time that you went down, were you under the impression that [the situation] was being defused?

A. It was actually looking rough when I got down there.

Q. . . . [C]an you tell us . . . what you mean by that?

A. Well, he was—see, I don't know what they were arguing about, but he was in her face and screaming and yelling, you know. That's when I approached and asked him what was going on. . . .

Q. You didn't have any intention of doing anything to Mr. Truss when you went downstairs, did you?

A. No, sir.

17

. . . .

Q.    Why did you take your gun downstairs instead of walking down without your gun?

A.    Because I [had] seen [that] he had a gun, and he[] [was] also armed with a gun.

Q.    He had a gun and cocked it?

A.    He had a gun and cocked it.

. . . .

Q.    And what did you do once you walked up to them?

A.    I . . . ask[ed] what was going on.

. . . .

A.    . . . I was like, "What's going on?" [Truss] said, "Ain't shit going on, my nigga.  What's up[?]" . . .

Q.    And what happened after that?

A.    That's when I—well, by this time I done met up with him, and he attempted to reach for his pistol.

Q.    And what did you do?

A.    I grabbed at it.

Q.    And you grabbed at it for what reason?

A.    To prevent him from coming up with it.  I know he loaded it at the door.

. . . .

A.    I was really trying to prevent him from coming up and shooting me.

. . . .

Q.  . . . Were you able to actually grab the gun, or the area where he had the gun at?

A.  Yes, sir.

Q.  And what happened after you grabbed it?

A.  Well, he pushed [Gardner] out [of] the way and broke loose, and that's when I came up and started shooting.

Q.  . . . And when he broke loose, did he do anything?

A.  Well, he attempted to come up with his pistol.

Shaheed also testified on redirect examination that Gardner had taken the only phone in the apartment with her when she confronted Truss.

¶37.   Based on this testimony, I would find that the evidence is legally insufficient to support Shaheed's murder conviction.  Shaheed's testimony shows that Shaheed attempted to avoid the conflict.  He sent Gardner out to defuse the situation.  He only joined Truss and Gardner outside after he heard a man yelling and was unable to see either of them from the apartment. Plus, Shaheed did not have a readily available means to contact the police as Gardner had taken the phone with her.  In addition, Shaheed knew that Truss was armed after Truss had cocked his gun at the apartment door.  Because Shaheed testified that he did not know what Gardner and Truss were arguing about, the evidence showed that Shaheed did not engage Truss as a jealous boyfriend with intent to murder.  Instead, the record shows that Shaheed approached Truss out of a concern for Gardner's safety.  Further, the record also shows that Shaheed did not shoot Truss until after he had attempted to prevent Truss from pulling his weapon.  Shaheed's testimony shows that Shaheed did not intend to murder Truss.

19

¶38.   Gardner's testimony supports this conclusion and demonstrates that the evidence is legally insufficient to support Shaheed's murder conviction.   Gardner testified:

Q.   [We]re you able to [keep Shaheed from answering the door]?

A.   Yes, ma'am.  He told me to go outside and handle the situation so the guy could leave.

Q.   And what did you do then?

A.   Before getting to the door, I got nervous because I heard him.

. . . .

A.   . . . I proceeded to go outside even though I heard Truss cock his gun.

Q.   So . . . you heard [Truss] cock his gun?

A.   Yes ma'am, I did.

. . . .

Q.   . . . [W]hat was [Truss] doing?

A.   He was talking erratic[ly]. . . Every time I'd tell him to leave, he'd tell me to shut up, just constantly telling me to shut up.

. . . .

Q.   Where did [Shaheed] stop?

A.   He walked up to where we were at and asked, "Is there a problem? What's going on? Are you okay?"

. . . .

A.   . . . Truss went to talking.  I didn't get a chance to respond to Shaheed.

Q.   Okay.  And then what happened?

A.   It was an altercation that occurred.

20

. . . .

Q.      What do you mean by . . . altercation?

A.      Truss . . . was trying to pull his gun and when Shaheed noticed it, he went to tussling with him telling him not to pull his gun on him[.] . . . And once Shaheed lost a grip, I was pushed out [of] the way.

. . . .

A.      . . . I [had] seen [Truss] trying to place his hand over on his gun to pull. He had a shirt on over the gun, but you could see the handle sticking out.

¶39.    Viewing Shaheed and Gardner's uncontradicted testimony together, it is evident that the evidence is legally insufficient to support the murder conviction. The evidence shows that Shaheed chose to avoid conflict with Truss by sending Gardner out to defuse the situation. Shaheed testified that he only exited the apartment after he could no longer see Gardner and heard a man yelling outside. Shaheed also testified that he brought his gun with him since he had already seen Truss cock his own weapon. Once again, Shaheed stated that he asked, "What's going on?" instead of immediately attacking Truss. Shaheed also stated that it was only when Truss appeared to reach for his gun that he struggled with Truss for control of Truss's weapon before shooting Truss. Thus, the testimony showed that Shaheed did not intend to murder Truss.

¶40.    Collins's testimony largely supports both Shaheed and Gardner's testimony. Collins stated that when she stepped out of her apartment Shaheed and Truss were already fighting. She testified, "I [had] seen two guys tussling. The next thing I know, the other guy pulled his hand up and the other guy shot him." Collins stated that Truss did not have a gun, but,

21

according to her testimony, she only saw the two men once the fight had begun. Collins's testimony does not demonstrate that Shaheed intended to murder Truss.

¶41. Beyond the eyewitnesses' testimony at trial, the testimony of the investigating officers does not demonstrate that Shaheed intended to murder Truss. Officer Bufkin testified that the weapon recovered from Truss's body was "locked and loaded, ready to go." In addition, Bufkin, on cross-examination, noted that the weapon was "stuck down in the front of [Truss's] pants." Officer Wells testified similarly that Truss's weapon was found "in between his legs." Bufkin and Wells's testimony does not contradict Shaheed or Gardner's testimony. Also, the fact that the weapon was found after the fight "in between [Truss's] legs" reconciles Collins's testimony that Truss did not have a gun. It also lends credence to the testimony that Shaheed, initially, attempted to gain control of Truss's weapon. While Officer Magee testified that his investigation revealed that Truss raised his hands and retreated from Shaheed, his testimony was based on Collins's account. Collins's testimony did not prove Shaheed's intent to murder either as she only testified that Truss "pulled his hand up." Other testimony and evidence was given at trial, but none of the evidence contradicted Shaheed and Gardner's testimony, which showed that Shaheed did not intend to murder Truss.

¶42. After the trial, the jury was instructed on murder as follows:

> The Defendant, Hamin Shaheed, has been charged in the indictment with the offense of murder. The Court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that:
>
> 1. Hamin Shaheed, on or about September 15, 2013, in the First Judicial District of Hinds County, Mississippi;

2. Did willfully kill the said Trinton Truss, a human being, by shooting said person with a deadly weapon, to-wit a firearm, and with a deliberate design to effect the death of Trinton Truss, and further;

3. That Hamin Shaheed was not acting in necessary self-defense;

then you shall find the Defendant, Hamin Shaheed, Guilty of Murder.

If the State of Mississippi has failed to prove any one, or more, o[f] the above listed elements of deliberate design murder beyond a reasonable doubt, then you shall find the Defendant not guilty of deliberate design murder, [and] continue your deliberations to determine if the Defendant is guilty of manslaughter.

Here, the evidence failed to show that Shaheed intended to kill Truss. The uncontradicted testimony showed that Shaheed attempted to avoid conflict with Truss. The evidence showed that he heeded Gardner's warning to not answer the door, sent Gardner out to defuse the situation with Truss, and only left the apartment after he heard yelling and could no longer see Gardner. Shaheed also testified that he did not know what Gardner and Truss were arguing about, evidenced by the fact that he asked what was going on instead of immediately attacking Truss.

¶43. Contrary to the majority's finding that the evidence is legally sufficient due to the testimony of Officer Magee, Magee's testimony relied on hearsay and is legally insufficient to support Shaheed's murder conviction. The majority also relies on Officer Dalton's testimony. Hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." M.R.E. 801(c).

23

¶44. The trial court abused its discretion in overruling Shaheed's hearsay objection to Dalton's testimony. *Birkhead v. State*, 57 So. 3d 1223, 1231 (¶29) (Miss. 2011). After Shaheed's second hearsay objection to Dalton's testimony was overruled, Dalton testified, "Shaheed said something to [Truss], and [Truss] was trying to explain to him with both hands in the air. . . . And at that time, Shaheed shot [Truss] in the head." Dalton did not witness the shooting and relied on her investigation and the alleged statements of Gardner to arrive at this account of the shooting. As such, Dalton's testimony, offered for its truth, was hearsay, and the trial court abused its discretion in admitting it.

¶45. While admitted at trial without objection, I would also properly review and disregard Officer's Magee's testimony under the plain-error doctrine. *Blunt v. State*, 55 So. 3d 207, 211 (¶16) (Miss. Ct. App. 2011). In order to review "under the plain-error doctrine, . . . there [must have been] an error in the trial court[,] and that . . . error [must have] resulted in a manifest miscarriage of justice." *Id*. (quotation omitted).[4] "The plain error rule will only be applied when a defendant's substantive or fundamental rights are affected." *Flora v. State*, 925 So. 2d 797, 811 (¶42) (Miss. 2006).

¶46. Here, Officer Magee's testimony was admitted without objection but the testimony itself constitutes hearsay. *Bridgeforth v. State*, 498 So. 2d 796, 800 (Miss. 1986) ("A witness cannot testify to what he knows only by the statements of others."). There is no dispute that

---

[4] Mississippi Rule of Evidence 103(f) states, "A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved." *See also* M.R.E. 103(f) cmt. (The rule "reflects a policy to administer the law fairly and justly."). While it is correct, as the majority recognizes, that "[n]o 'legal rule' requires a trial judge to exclude hearsay in the absence of an objection," Rule 103(f) enables any court, including this Court, to recognize a plain error that affects a party's substantive or fundamental rights.

24

Officer Magee did not witness the shooting. His testimony was a result of his investigation, including interviews with Gardner and Collins. At trial, Magee testified, "During this altercation, my investigation revealed that the victim himself was trying to defuse the situation while raising his hands and being advised that he didn't want any part of the altercation."[5] This testimony was based on hearsay.

¶47. The failure of Shaheed's counsel to object and the trial court's admittance of the hearsay testimony affected Shaheed's fundamental and substantial rights. The testimony is the only evidence that Shaheed intended to murder Truss. The testimony also affects Shaheed's fundamental rights. As such, I would disregard this testimony as hearsay that should not have been admitted at trial.

¶48. In addition to our analysis regarding Magee and Dalton's testimony, I further disagree with the majority that the officers' hearsay testimony is legally sufficient to support Shaheed's murder conviction. Magee and Dalton's testimony was the only evidence in the record that supported the element of intent, and, as uncorroborated hearsay evidence, it is legally insufficient to support Shaheed's conviction.

¶49. The majority cites two Mississippi cases concerning unobjected-to hearsay that I find

---

[5] The majority argues that because Shaheed's attorney cross-examined Magee concerning the hearsay testimony, he elicited the testimony and the testimony cannot be reviewed under the plain-error doctrine. There is a difference, however, in a party eliciting hearsay evidence for the first time and later complaining about it on appeal, and a party cross-examining a witness about testimony that had already been entered into evidence. *See Fleming v. State*, 604 So. 2d 280, 289 (Miss. 1992) (recognizing that the incriminating testimony was "elicited by the defense" where neither side had mentioned the evidence before the defense began its cross-examination). Here, the State introduced the hearsay testimony on direct examination. Shaheed should not be penalized for cross-examining Magee concerning his testimony that had already been introduced into evidence.

unpersuasive. The supreme court, in *Veal v. State*, 585 So. 2d 693, 697 (Miss. 1991), recognized unobjected-to hearsay testimony as "competent evidence" but specifically noted: "Fortunately, we do not face the question whether the verdict could stand on the [hearsay] testimony of seven-year-old B.A.H. and eleven-year-old B.M.H. alone. Their testimony is corroborated in critical particulars by Veal's confession. This evidence considered in the aggregate, we cannot say that the Court abused its discretion . . . ." Here, the majority incorrectly answered the question of whether the verdict can stand solely on the uncorroborated hearsay testimony of Magee and Dalton. Collins's testimony that Truss "pulled his *hand* up" does not support either Magee's testimony that Truss "rais[ed] his *hands*" or Dalton's testimony that Truss had "*both hands* in the air." (Emphasis added). There is no other evidence in the record of Shaheed's intent to murder Truss.

¶50. The supreme court also correctly recognized that unobjected-to hearsay evidence "may properly be considered and given its natural and logical probative effect, *as if it were in law competent evidence*." *Burns v. State*, 438 So. 2d 1347, 1350 (Miss. 1983) (emphasis added).[6] In *Burns*, though, the hearsay evidence was a record from the National Crime Information Center (NCIC) that showed that the vehicle the defendant was driving was stolen. *Id.* Additionally, the NCIC record before the *Burns* court was corroborated by other evidence: (1) the defendant testified, "I had an idea . . . . [t]hat I messed up when I took her car," and

---

[6] I also note that the *Burns* court cited *Citizens Bank of Hattiesburg v. Miller*, 194 Miss. 557, 11 So. 2d 457, 459 (1943), which dealt with hearsay evidence that was corroborated, like in *Veal* and *Burns*. The *Miller* court wrote, "[S]uch [hearsay] testimony, when considered in connection with [the witness's] positive [nonhearsay] statement that her purported signature was not genuine, was sufficient . . . ."

26

(2) one of the defendant's closing arguments was predicated on the fact that the vehicle was stolen.[7] *Id.* at 1349-50. In contrast to the NCIC record, the hearsay at issue here is uncorroborated testimony by a witness who was not present during the shooting. Here, again, there is no separate evidence to support the element of intent and no evidence to corroborate Magee or Dalton's testimony.

¶51. While it is the role of jury to "decide . . . what weight to give to any particular piece of evidence," it is not the jury's role to determine if uncorroborated hearsay evidence is legally sufficient to support a murder conviction. *Brown v. State*, 764 So. 2d 463, 467 (¶9) (Miss. Ct. App. 2000). The State had the burden to satisfy all three elements of the murder charge. Shaheed stipulated to the first element of murder, and there is legally sufficient evidence to support the second element. The record, however, is devoid of any evidence that demonstrates Shaheed's intent to murder Truss other than the uncorroborated hearsay testimony. Notably, as discussed above, both Gardner and Collins, the two eyewitnesses

---

[7] The *Burns* Court recognized:

There is no doubt appellant was in possession of a stolen automobile because in closing argument his attorney stated,

> It is in evidence and we don't dispute it, he has got a conviction for armed robbery, he has got a conviction for burglary and larceny and he was down here in a *stolen car*.

Appellant's counsel further stated:

> Now, I invite the [S]tate to come up here and tell you how it is you are supposed to believe that he knew the stuff was in the trunk, he was in a *stolen car*.

*Burns*, 438 So. 2d at 1350 (emphasis added).

whom the officers interviewed, also testified at trial and neither of their accounts supports the officers' testimony.[8] Thus, the evidence is legally insufficient to show that Shaheed intended to murder Truss.

## MANSLAUGHTER

¶52. While the evidence is legally insufficient to support the jury's verdict of murder, that same evidence is legally sufficient to find Shaheed guilty of manslaughter. *Wade v. State*, 748 So. 2d 771, 774 (¶¶9-10) (Miss. 1999).

¶53. Here, the State's instruction S-5 explained the elements of manslaughter. During the jury-instructions conference, the judge, with agreement of counsel, amended S-5 to include a reference to self-defense. The judge instructed the jury on manslaughter as follows:

> The Court instructs the jury that if you unanimously find that the State has failed to prove all of the elements of the crime of murder, you may then proceed in your deliberations to consider the lesser charge of manslaughter.

> However, it is your duty to accept the law given to you by the Court. And if the facts [and] the law warrant a conviction of the crime of murder, then it is you duty to make such finding and not be influenced by your power to find a lesser offense.

> This provision is not designed to relieve you from performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge, but does justify a verdict in the lesser crime.

> The Court instructs the jury that if a person kills another under the actual bona fide belief that such a killing is necessary in order to protect himself from great bodily harm or death, but that such belief is not reasonable under the circumstances, then there's no malice aforethought and the killing is not murder, but at most is the crime of manslaughter.

---

[8] From the transcript of Dalton's testimony, it appears that she only interviewed Gardner, not Collins.

28

Therefore, if you find from the evidence in this case that on September the 15th, 2013[,] the defendant did shoot and take the life of Trinton Truss acting on his actual bona fide belief that such action was necessary to protect himself from great bodily harm or death at the hands of Trinton Truss, but that such belief by the defendant was not reasonable under the circumstances, then you may find the defendant guilty of the lesser offense of manslaughter.

If, however, you find from the evidence in this case that on or about September the 15th, 2013[,] the defendant did shoot and take the life of Trinton Truss acting on his actual bona fide belief that such action was necessary to protect himself from great bodily harm or death at the hands of Trinton Truss, and you further find that such belief by the defendant was reasonable under the circumstances, then you may find the defendant acted in self-defense, and he is not guilty of the lesser included offense of manslaughter, nor murder.

Thus, the jury was instructed on murder and was also instructed on manslaughter and self-defense.

¶54. Because of this instruction and the testimony given at trial, the evidence is legally sufficient to support a conviction of manslaughter. Shaheed stipulated to the fact that he shot and killed Truss, satisfying the first element of manslaughter: killing Truss. Shaheed's testimony that he did not know what Gardner and Truss were arguing about is legally sufficient evidence to satisfy the second element of manslaughter: without malice. Further, there was legally sufficient evidence satisfying the third element of manslaughter: acting under the unreasonable bona fide belief that self-defense was necessary. Shaheed testified to his belief for the need of self-defense, but Collins claimed that Truss did not have a weapon. Further, Gardner, at one point in her testimony, wavered as to whether she had actually seen Truss's hand on his weapon at the beginning of the fight. In light of this, the evidence is legally sufficient to support a conviction of manslaughter. I, therefore,

29

respectfully dissent and would find Shaheed guilty of manslaughter.

**LEE, C.J., AND FAIR, J., JOIN THIS OPINION.**